82 N.Y.2d 57 (1993)
623 N.E.2d 536
603 N.Y.S.2d 409
In the Matter of the Arbitration between Liberty Mutual Insurance Company, Appellant, and Milicent Hogan et al., Respondents.
Court of Appeals of the State of New York.
Argued and submitted September 8, 1993.
Decided October 21, 1993.
Callahan, Schepp, Yuhas, Adams & Carfora, Mineola (Michael Majewski of counsel), for appellant.
Livoti, Bernstein & Moraco, New York City (Berry S. Bernstein of counsel), for respondents.
Judges SIMONS, HANCOCK, JR., BELLACOSA and LEVINE concur with Judge SMITH; Chief Judge KAYE concurs in result in a separate opinion in which Judge TITONE concurs.
*58 SMITH, J.
The issue in this proceeding to stay arbitration is whether a "livery exclusion" contained in the uninsured motorists coverage endorsement of a personal automobile liability policy is invalid so as to require arbitration of an uninsured motorist claim. We hold that such an exclusion is not based on statute or regulation and is inconsistent with the purpose of the mandatory uninsured motor vehicle statutes and the public policy of this State, and, therefore, is unenforceable.
Respondents were passengers in a car, which was owned and operated by John Karim, and which passed a stop sign at the intersection of 143rd Street and Linden Boulevard, in Queens County, and collided with a vehicle owned by Jeannette Williams and operated by Frank Venable. At the time, Karim was operating his vehicle as a livery. Karim's vehicle *59 was insured by appellant Liberty Mutual Insurance Company (Liberty Mutual). Both the liability coverage provision and the uninsured motorists coverage endorsement in the policy issued by Liberty Mutual to Karim excluded from coverage vehicles used "to carry persons or property for a fee."
Based on the exclusions in the policy, Liberty Mutual declined to defend or indemnify Karim in a personal injury action brought by respondents. Respondents then demanded arbitration from Liberty Mutual under the uninsured motorists coverage endorsement of the policy. Liberty Mutual commenced this proceeding to stay arbitration, asserting that the liability coverage provision and the uninsured motorists coverage endorsement in the policy it issued to Karim contained a valid livery exclusion, that at the time of the accident Karim was using his vehicle as a livery, and that the other vehicle involved in the accident was insured.
Supreme Court denied the application to stay arbitration and dismissed the petition (150 Misc 2d 456). The court concluded that since the other vehicle involved in the accident was not at fault, the fact that it was insured "is irrelevant," that the exclusion for livery conveyances permitted under 11 NYCRR 60-1.2 (a) is inapplicable here since "that rule refers only to the `policy of liability insurance' * * *, and not to the uninsured motorist endorsement," and that the livery exclusion under the uninsured motorists coverage endorsement is "contrary to Insurance Law § 3420 (f) (1) * * * [and] inconsistent with the strong public policy underlying statutes providing for uninsured motorist coverage" (id., at 458). The Appellate Division affirmed for the reasons stated by Supreme Court (see, 188 AD2d 378). This Court granted leave to appeal.
Insurance Law § 3420 mandates that every automobile insurance policy must contain an uninsured motor vehicle endorsement. Section 3420 (f) (1) provides:
"No policy insuring against loss resulting from liability * * * for bodily injury or death * * * arising out of the ownership, maintenance and use of a motor vehicle by the insured shall be issued * * * unless it contains a provision whereby the insurer agrees that it will pay to the insured * * * all sums * * * which the insured or his legal representative shall be entitled to recover as damages from an owner or operator of an uninsured motor vehicle * * * [or] an insured motor vehicle *60 where the insurer disclaims liability or denies coverage."
Liberty Mutual argues that although section 3420 (f) (1) specifically sets forth the circumstances under which uninsured motorist insurance applies, that statute is silent as to whether there may be valid exclusions. Thus, Liberty Mutual asserts, its uninsured motorists coverage endorsement, which excludes from coverage vehicles being used "to carry persons or property for a fee," is not contrary to that statute. For the following reasons, we reject Liberty Mutual's arguments.
First, a provision in the uninsured motorists coverage endorsement of a liability insurance policy, such as the one in Liberty Mutual's policy, that excludes from coverage vehicles used "to carry persons or property for a fee" is not based on any statute or regulation. As stated, Insurance Law § 3420 (f) (1) requires that every automobile insurance policy contain an uninsured motor vehicle endorsement. Neither that statute nor any regulations applicable to it mentions any exclusions. That is in contrast to the regulations for liability coverage (see, 11 NYCRR 60-1.2), no fault (see, 11 NYCRR 65.12) and supplemental uninsured/underinsured (see, 11 NYCRR 60-2.3), all of which specify what exclusions are allowed. The conclusion to be drawn is that when the Legislature and the State want to allow exclusions, they say so. In the absence of an express statutory or regulatory provision permitting such an exclusion, this Court declines to endorse that exclusion. The concurrence states that "the livery exclusion authorized by regulation (11 NYCRR 60-1.2 [a]) may be equally applicable to compulsory uninsured motorists coverage" (concurring opn, at 62). The more logical view is that since the Legislature enacted a compulsory uninsured motorist coverage statutory scheme, any exclusions to that scheme should also be expressly authorized by statute or regulation.
As the Court stated in Rosado v Eveready Ins. Co. (34 N.Y.2d 43, 49), once an insurance company issues a liability policy to an insured, "its obligation, with the exception of permitted exclusions, [arises] by operation of law and [is] as broad as the requirements of the applicable statutes." If an attempted exclusion is not permitted by law, the insurer's liability under the policy cannot be limited (id.; accord, Planet Ins. Co. v Bright Bay Classic Vehicles, 75 N.Y.2d 394, 399).
Second, enforcement of the livery exclusion in the uninsured motorists coverage endorsement of a liability insurance *61 policy would be inconsistent with the strong public policy underlying the compulsory uninsured motor vehicle statutes, "to ensure that innocent victims of motor vehicle accidents be recompensed for their injuries and losses" (Matter of Allstate Ins. Co. v Shaw, 52 N.Y.2d 818, 819). The purpose of the compulsory uninsured motor vehicle statutory scheme is to provide coverage "to insured persons who suffer automobile accident injuries at the hands of financially irresponsible motorists" (Matter of Country-Wide Ins. Co. v Wagoner, 45 N.Y.2d 581, 586). The aim, to make the prescribed compensation available in all such cases, calls for a policy of inclusion rather than exclusion in determining whom it covers (id.). Enforcement of a "livery exclusion" in an uninsured motor vehicle endorsement would be contrary to the purpose underlying this State's compulsory uninsured motor vehicle statutes and would reduce the scope of coverage required by the statutory mandate.
Liberty Mutual urges that Insurance Law § 3110 authorizes the Superintendent of Insurance to withdraw approval of the policy if the uninsured motorists coverage endorsement is determined to contravene public policy or statutory intent, and that we should construe the inaction by the Superintendent as approval of the livery exclusion. Although the construction given to a statute by an agency charged with its administration, supervision and enforcement is entitled to considerable weight (People v Newman, 32 N.Y.2d 379, 388, cert denied 414 US 1163), inaction by the Superintendent of Insurance here does not divest the courts of their duty "to interpret statutes so as to reach a reasonable result whenever possible" (Matter of Vega v Bell, 47 N.Y.2d 543, 552).
While the concurrence asserts that we are invalidating the livery exclusion in an uninsured motorists coverage endorsement on "illusory" public policy grounds (concurring opn, at 64), and would decide this case on appellant's unpreserved argument that respondents may seek recovery from the Motor Vehicle Accident Indemnification Corporation (MVAIC), the issue before this Court, and the only issue raised in the prior courts, is whether a livery exclusion contained in an uninsured motorists coverage endorsement of a personal automobile liability policy is invalid. As stated, the challenged livery exclusion is not authorized by any statute or regulation. The exclusion is inconsistent with the sound public policy of this State of ensuring that innocent victims of motor vehicle accidents are compensated for their injuries and losses. Moreover, *62 it is questionable whether a claim to the MVAIC is an adequate remedy here, particularly in view of the requirements such as notice (see, Insurance Law § 5208). As the Rosado Court noted, the presence of MVAIC should not matter. To allow the insurer here to escape liability is to allow the insurer to be "unjustly enriched to the detriment of the public, which eventually bears the burden through MVAIC" (id., at 49).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge KAYE (concurring). Contrary to the majority's holding, the livery exclusion authorized by regulation (11 NYCRR 60-1.2 [a]) may be equally applicable to compulsory uninsured motorists coverage. But because Supreme Court held that the exclusion is limited to the liability portion of the policy (150 Misc 2d 456, 458), and Liberty Mutual does not contend otherwise, I agree that the insurer in this case should not have the benefit of that statutory construction. By the same token, however, Liberty Mutual's failure to contest the issue should not bind the Superintendent of Insurance or other insurers who are prepared to make the argument. I therefore concur in the result in this case but write separately to suggest that the livery exclusion may be authorized by regulation for uninsured motorists coverage and does not violate public policy.
Vehicle and Traffic Law § 311 (4) (a) defines the term "owner's policy of liability insurance" as including whatever minimum coverage is prescribed by regulation. Subpart 60-1 implements the statutory directive and contains the following provision regarding mandatory uninsured motorists coverage:
"Payments to insured. Such an `owner's policy of liability insurance' shall be subject to the applicable provisions of section 167 of the Insurance Law, as amended. For the purpose of complying with the provisions of subsection 2-a of section 167 [now § 3420 (f) (1) (mandatory uninsured motorists coverage)], no policy subject to this Part shall be issued by any authorized insurer unless it contains coverage providing for payments to the insured, as defined in such coverage, by the New York Motor Vehicle Accident Indemnification Corporation, pursuant to the provisions of article 17-A of the *63 Insurance Law applicable to such payments." (11 NYCRR 60-1.4; emphasis added.)
The regulations additionally provide that "[s]uch an `owner's policy of liability insurance' may contain in substance the following exclusions: (a) while the motor vehicle is used as a public or livery conveyance" (11 NYCRR 60-1.2 [a]; emphasis added). Thus, it is possible to read the statutes and regulations together as authorizing the livery exclusion for uninsured motorists coverage as well as liability coverage. Indeed, it is significant that the majority cannot find any other regulations pertaining to mandatory uninsured motorists coverage, for the Superintendent may have intended subpart 60-1, including the livery exclusion, to apply to this type of insurance. In the posture of the present appeal, it should be clear that the Court's holding in this case would not foreclose the issue in future cases.
Moreover, I disagree with the majority's view that a livery exclusion is void as against public policy. To the extent uninsured motorists coverage is unavailable to an innocent passenger because of such an exclusion, a claim for benefits may be filed with the Motor Vehicle Accident Indemnification Corporation (MVAIC).
In 1956, New York became the second American jurisdiction to require automobile owners to carry liability insurance. It soon became clear, however, that compulsory liability insurance could not solve the problems posed by uninsured and hit-and-run drivers (Laufer, Embattled Victims of the Uninsured: In Court With New York's MVAIC, 1959-1969, 19 Buffalo L Rev 472, 473-474 [1970]). Thus, the Insurance Law was amended to require liability policies to include an uninsured motorists endorsement providing benefits in these situations (see, former Insurance Law § 167 [2-a], recodified as § 3420 [f] [1]).
Even then, however, mandatory insurance would occasionally fail "to accomplish its full purpose of securing to innocent victims of motor vehicle accidents recompense for the injury and financial loss inflicted upon them" (Insurance Law § 5201 [b]). For example, pedestrians struck by an uninsured, judgment-proof driver would not have a source of recovery. Accordingly MVAIC was created to "close the gaps" in insurance (Matter of Wallace v MVAIC, 25 N.Y.2d 384, 388; see also, Matter of Rice v Allstate Ins. Co., 32 N.Y.2d 6, 12).
MVAIC "provide[s] persons injured by financially irresponsible *64 motorists a fund from which they could seek some compensation for their injuries" (Matter of Lloyd [MVAIC], 23 N.Y.2d 478, 481; see generally, Insurance Law art 52). Each automobile insurance company, as a condition of doing business in this State, is required to become a member of MVAIC (Insurance Law § 5203 [b]; Matter of Lloyd, 23 NY2d, at 481) and fund its operations in proportion to the amount of business it does (Insurance Law § 5207 [a], [b]).
The MVAIC scheme sets up mutually exclusive categories of "qualified persons" and "insureds" (Matter of Rice, 32 NY2d, at 10). "Insureds" are persons for whom uninsured motorists coverage is available (see, Insurance Law § 5202 [i]); these people are expected to recover under their policies and not from the MVAIC. A "[q]ualified person" is a resident of this State who is not an insured or an owner of an uninsured vehicle (see, Insurance Law § 5202 [b] [i]). Qualified persons may file claims with the MVAIC arising out of accidents caused by the owner or operator of an uninsured motor vehicle (see, Insurance Law § 5208; see generally, Buckner v MVAIC, 66 N.Y.2d 211, 213).
In the present case, the culpable driver was operating his car as a livery but obtained, and paid for, only a personal automobile insurance policy. It is obvious that a vehicle used as a livery poses a greater risk to insurance companies than a personal automobile and would be insured at a higher premium. Indeed, it is for that reason the Superintendent of Insurance authorizes livery exclusions. Accordingly, no one disputes that Liberty Mutual could properly disclaim liability coverage in these circumstances. That disclaimer having rendered the driver "uninsured" (see, Insurance Law § 5201 [b] [6]; § 5202 [j] [1]; Matter of Knickerbocker Ins. Co. [Faison], 22 N.Y.2d 554, 556, cert denied 393 US 1055), the passengers now make the clever argument that they are entitled to the uninsured motorists coverage available under the driver's own policy. But that portion of the policy, too, contains a livery exclusion.
The Court's conclusion that public policy militates against giving effect to the livery exclusion is based solely on the notion that innocent passengers might go unrecompensed (majority opn, at 60-61). This proffered public policy is illusory, generated only by ignoring Liberty Mutual's argument that the MVAIC was available to the passengers to vindicate their claims.
*65 Because of the livery exclusion, these passengers were never "insureds" under the contract's uninsured motorists coverage and thus they would have been "qualified" to file a claim with MVAIC (compare, Matter of Knickerbocker Ins. Co. [Faison], 22 NY2d, at 558-559 [passengers who were "insureds" at time of accident entitled to recover against insurance company; future disclaimer of coverage due to driver's noncooperation would not exclude passengers from category of "insureds"]).
Moreover, contrary to the majority's suggestion, the statute requiring insurance companies to provide uninsured motorists coverage was not intended to be foolproof. The MVAIC was created to fill the gaps in coverage, and it was to that forum the passengers should have sought a remedy.[*]
Order affirmed, with costs.
NOTES
[*] The majority notes that these plaintiffs may not have redress under MVAIC because of their failure to give timely notice. That particular parties fail to pursue their rights, however, cannot determine the correct rule generally applicable.