887 A.2d 146

THE PROFORMANCE INSURANCE CO., PLAINTIFF–APPELLANT, v. STACEY JONES AND SHAWN WHELAN, DEFENDANTS–RESPONDENTS, AND ADAM ROSARIO, CHARMAINE PANICHI, AUTO ADVANTAGE, HENRY WARD AND HANK'S MOVING COMPANY, DEFENDANTS.

Argued September 12, 2005—Decided December 22, 2005.

*Aldo J. Russo,* argued the cause for appellant (*Russo & Della Badia,* attorneys).

*Chad A. Rutkowski,* argued the cause for respondent Stacey Jones (*White and Williams,* attorneys; *Mr. Rutkowski, Noreen P. Kemether* and *Stephen Trzcinski,* on the brief).

*Jeffrey S. Craig,* argued the cause for respondent Shaw Whelan (*Kelley, Wardell & Craig,* attorneys).

Justice WALLACE delivered the opinion of the Court.

This case implicates the initial permission rule and the business pursuits exclusion of an insured's automobile insurance policy. The question is whether a permissive user is entitled to liability coverage if he or she uses a vehicle in violation of a business pursuits exclusion in the insurance policy and in disregard of the insured's direction not to let anyone else drive the vehicle. We hold that the grant of initial permission requires the insurer to provide coverage for third-party claims because the public policy underlying our mandatory insurance statute trumps the business exclusion clause. We also hold that the insurance policy should be construed to provide coverage up to the minimum limits required by statute.

I.

Charmaine Panichi owned a 1997 Ford pickup truck that she loaned to her relative Henry Ward. That was not the first time that Panichi had loaned her truck to Ward. On this occasion, she instructed him not to use the truck in his furniture moving business and not to let anyone else drive it. Ward disregarded those instructions and authorized his employee, Adam Rosario, to use the truck to deliver furniture. While driving the truck with passenger Shawn Whelan, Rosario fell asleep at the wheel, struck a parked car, and injured a pedestrian, Stacy Jones. Whelan also was injured in the accident.

In May 2001, Jones filed a personal injury action in the Court of Common Pleas, Philadelphia County, Pennsylvania. She named Panichi, Ward, and Rosario as defendants. On July 16, 2001, Whelan brought a similar action in New Jersey Superior Court

against the same defendants. Ward and Rosario failed to answer and defaulted in both actions.

Panichi was insured by The Proformance Insurance Company. On July 2, 2002, Proformance filed a complaint for declaratory judgment, seeking a declaration that Panichi, Ward, and Rosario were not covered under its policy insuring Panichi's pickup truck. The Superior Court consolidated Whelan's personal injury action with Proformance's declaratory judgment action and scheduled the consolidated matters for arbitration. Only the Whelan matter was arbitrated. The arbitrator found Rosario and Ward 100% liable and awarded Whelan $50,000. Proformance did not defend either Rosario or Ward in that proceeding. After Whelan filed a motion to confirm the award, the court entered judgment against Rosario and Ward, jointly and severally.

Jones filed a motion for summary judgment to compel Proformance to provide coverage.[1] Whelan subsequently joined in that motion. Proformance filed a cross-motion for summary judgment. The trial court granted summary judgment in favor of Whelan and Jones, finding that coverage existed pursuant to the initial permission rule. Proformance appealed.

In an unpublished opinion, the Appellate Division held that the initial permission rule applied to a subsequent permittee and that coverage was compelled under the omnibus clause of the policy. Consistent with its view of the relevant case law, the panel concluded that the "legislative policy requires coverage under the initial permission rule, notwithstanding the business exclusion." We granted certification "limited solely to the issue of whether a business pursuits exclusion in an automobile insurance policy is enforceable when the person given permission by the insured to operate the vehicle permits another to use it." *The Proformance Ins. Co. v. Jones*, 183 *N.J.* 214, 871 *A.*2d 91 (2005).

---

[1] The record does not reflect when Jones was permitted to join the declaratory judgment action.

## II.

Proformance contends that the initial permittee, Henry Ward, did not obtain the status of a permissive user because he violated the owner's instructions not to use the vehicle for business and not to allow anyone else to drive the vehicle. Proformance argues that because Ward was not a permissive user, he had no authority to allow Rosario to use the vehicle. Further, Proformance claims that Rosario's status as a permissive user is irrelevant because the business pursuits exclusion in the policy limits coverage. Proformance theorizes that if the policy exclusion is rendered ineffective because the insured gave permission to someone else to operate the vehicle, insurers will be forced to cover risks they did not anticipate in rating premiums. Proformance adds that invalidating its business exclusion will promote rate evasion and will give a subsequent permittee more rights than the named insured.

In contrast, Whelan and Jones argue that once a person is given permission to use a vehicle, any subsequent use short of theft or the like is a permissive use within the terms of the standard omnibus clause in the policy. They contend that the initial permission extends to a second permittee and that Proformance cannot exclude coverage through a business pursuits exclusion when such coverage exists by virtue of the initial permission rule arising out of the standard omnibus clause of every automobile policy mandated by *N.J.S.A.* 39:6B-1.

## III.

The New Jersey omnibus statute in effect at the time of the accident herein required every owner of a registered vehicle to maintain liability insurance, "insuring against loss resulting from liability imposed by law for bodily injury, ... sustained by any person arising out of the ... operation or use of a motor vehicle." *N.J.S.A.* 39:6B-1(a). The statute mandated coverage of at least $15,000 for one person and $30,000 if more than one person was injured in the accident. *Ibid.*

We first adopted the initial permission rule in *Matits v. Nationwide Mutual Insurance Co.*, 33 *N.J.* 488, 166 *A.*2d 345 (1960). We held that

if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy.

[*Id.* at 496–97, 166 *A.*2d 345.]

In adopting that rule, we expressed that it "best effectuates the legislative policy of providing certain and maximum coverage, and is consistent with the language of the standard omnibus clause in automobile liability insurance policies." *Id.* at 496, 166 *A.*2d 345. Thus, we concluded that the permittee's "deviation from the purpose for which she borrowed the vehicle did not annul the protection afforded her and the injured plaintiffs by the omnibus clause of [the] policy." *Id.* at 497, 166 *A.*2d 345.

Four years later, in *Small v. Schuncke*, 42 *N.J.* 407, 201 *A.*2d 56 (1964), we extended the initial permission rule to provide coverage for a subsequent permittee using the vehicle beyond the original permission. In that case, Herbert Weidel authorized his nephew, Michael Wagner, to use Weidel's car to drive his wife to visit him in the hospital and to perform errands for her. *Id.* at 410, 201 *A.*2d 56. One night after returning from the hospital, Wagner picked up a friend, Martin Schuncke, and drove to New York for the weekend. *Ibid.* At some point, Schuncke started driving and later was involved in a fatal crash. *Ibid.* Various actions were filed against Weidel and Schuncke. *Id.* at 410–11, 201 *A.*2d 56. Weidel was insured by Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Company. *Id.* at 410, 201 *A.*2d 56. Pennsylvania Threshermen refused to cover Schuncke because he was operating Weidel's car without his permission. *Id.* at 413, 201 *A.*2d 56. We held that Pennsylvania Threshermen must provide coverage for Schuncke because "[t]he initial permission rule as expressed in *Matits* contemplates a situation in which the subsequent use of a car may be inconsistent with and even frustrate the intention and plans of the person granting permission." *Id.* at

414–15, 201 *A.*2d 56. We explained that "[u]nder the initial permission rule only two questions must be answered to determine coverage. Was there permission to use the car initially? Did the subsequent use, while possession was retained, constitute 'theft or the like?' " *Id.* at 413, 201 *A.*2d 56.

Since our decisions in *Matits* and *Small,* "[c]ourts have held that a nearly unlimited range of conduct on the part of a driver or passenger, 'short of outright theft [of the vehicle,] is within the scope of an insured's or owner's permission.'" *Jaquez v. Nat'l Cont'l Ins. Co.,* 178 *N.J.* 88, 93, 835 *A.*2d 309 (2003) (citation omitted). Underlying the initial permission rule is the intent "to assure 'that all persons wrongfully injured have financially responsible persons to look to for damages' because 'a liability insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured.'" *Verriest v. INA Underwriters Ins. Co.,* 142 *N.J.* 401, 414, 662 *A.*2d 967 (1995) (citation omitted).

We need not concern ourselves with the outer-reach of the initial permission rule. It is obvious that the answers to the two relevant questions require a conclusion that the initial permission rule was satisfied in this case. The first question is: Did the insured or owner give initial permission to use the vehicle? It is undisputed that Panichi gave Ward permission to use the pickup truck. Moreover, "[o]nce established that 'the first user . . . ha[d] permission from the named insured, lack of permission, whether express or implied, of such named insured for use by a later permittee is irrelevant.'" *Rutgers Cas. Ins. Co. v. Collins,* 158 *N.J.* 542, 549, 730 *A.*2d 833 (1999) (citations omitted). Thus, Ward's disregard of Panichi's instruction not to let anyone else drive the vehicle has no impact on the coverage issues. Coverage should be afforded in favor of Whelan and Jones unless the subsequent use constituted "theft or the like." The obvious answer, which Proformance does not challenge, is that the initial permittee and the subsequent permittee's use of the vehicle did not constitute theft or the like.

## IV.

■ We turn now to Proformance's contention that notwithstanding the application of the initial permission rule, the business pursuits exclusion in its policy bars coverage of Whelan's and Jones's claims. Proformance argues that its business pursuits exclusion is clear and must be enforced. Whelan and Jones dispute the clarity of the business exclusion and argue that it is ambiguous. Because we did not grant certification on that issue, we will not decide it. We assume for the purpose of this appeal that the policy provisions were clear.

The Proformance policy provided liability coverage for any covered person legally liable "except as excluded by the provisions listed in the 'Liability, Uninsured/Underinsured Motorists and Medical Expense Losses We Do Not Cover' and the 'Things We Do Not Cover' sections of this policy." In the first section of losses not covered, the policy states:

> We do not provide coverage for (4) Anyone while employed or otherwise engaged in the *business* or occupation of: a. Selling, Renting or Leasing; b. Repairing; c. Servicing; d. Storing; or e. Parking; *motor vehicles* or *boats* designed for use mainly on public highways or waterways.... (5) Anyone while maintaining or using any vehicle while that person is employed or otherwise engaged in any *business* (other than farming or ranching) not described in exclusion 4. This exclusion (5.) does not apply to the maintenance or use of: a. A private passenger automobile; b. A pickup or van that you own; or c. A trailer used with a vehicle described in a. or b. above.

In the second exclusion section, the policy states:

> We do not provide coverage for ... 2. Business Pursuits. Liability for *personal injury, bodily injury* or *property damage* arising out of business pursuits of you or any *covered person.* This exclusion does not apply to: a. Activities which are usual to *non-business* pursuits;.... 6. Livery. Any person or property for *personal injury, bodily injury, property damage* or *medical expenses* occurring while your *motor vehicle* or *boat* is being used to carry persons or property for a fee. This exclusion does not apply to a share-the-expense car pool.

■ Pursuant to the omnibus liability coverage statute, every owner of a motor vehicle registered in New Jersey must have liability insurance coverage. *N.J.S.A.* 39:6B. Our comprehensive insurance scheme of mandating automobile insurance evinces a strong legislative policy of assuring at least some financial protec-

tion for innocent accident victims. *Home State Ins. Co. v. Cont'l Ins. Co.*, 313 *N.J.Super.* 584, 589, 713 *A.2d* 557 (App.Div.1998), *aff'd*, 158 *N.J.* 104, 726 *A.2d* 1289 (1999). An insurer must afford liability coverage in at least the amount mandated by the legislature. *See State Farm Mut. Auto. Ins. Co. v. Zurich Am. Ins. Co.*, 62 *N.J.* 155, 170, 299 *A.2d* 704 (1973).

We have often stated that an insurance policy is not an ordinary contract but a " 'contract of adhesion between parties who are not equally situated.' " *Doto v. Russo*, 140 *N.J.* 544, 555, 659 *A.2d* 1371 (1995) (quoting *Meier v. New Jersey Life Ins. Co.*, 101 *N.J.* 597, 611, 503 *A.2d* 862 (1986)). Further, when the language of the policy will support more than one meaning, courts should "interpret the contract to comport with the reasonable expectations of the insured." *Zacarias v. Allstate Ins. Co.*, 168 *N.J.* 590, 595, 775 *A.2d* 1262 (2001). Consistent with that approach, "policy exclusions must be narrowly construed; [and] the burden is on the insurer to bring the case within the exclusion." *Princeton Ins. Co. v. Chunmuang*, 151 *N.J.* 80, 95, 698 *A.2d* 9 (1997).

A policy provision that conflicts with statutorily mandated coverage will not be enforced. *Zurich, supra*, 62 *N.J.* at 170, 299 *A.2d* 704. Our courts have long interpreted insurance policies to exclude provisions that are contrary to the public policy of mandating coverage on every vehicle for the benefit of injured parties. In *Selected Risks Insurance Co. v. Nationwide Mutual Insurance Co.*, 133 *N.J.Super.* 205, 336 *A.2d* 24 (App.Div.1975),[2] our Appellate Division considered the validity of a clause that excluded coverage for injuries arising out of the operation of an automobile repair shop. The operator of a service station was injured when the insured's vehicle suddenly lurched forward and struck him. *Id.* at 209, 336 *A.2d* 24. It was not disputed that the operator was excluded from coverage if the exclusions were valid. The panel

---

[2] That case involved compulsory automobile insurance pursuant to *N.J.S.A.* 39:6–46, which was repealed and replaced by *N.J.S.A.* 39:6B–1.

found coverage, concluding that "[t]o the extent that an exclusionary clause conflicts with the statutorily required omnibus clause, the language of the exclusionary clause must be deemed inapplicable." *Id.* at 211, 336 *A.*2d 24.

In *Ryder P.I.E. Nationwide v. Harbor Bay,* 119 *N.J.* 402, 407, 575 *A.*2d 416 (1990), we addressed the obligation to provide coverage to an additional insured in a loading and unloading case. *Id.* at 406–07, 575 *A.*2d 416. We held that "[b]ecause of statutorily-imposed omnibus requirements, any contractual attempt to exclude coverage for an additional insured will be held invalid." *Id.* at 408, 575 *A.*2d 416.

In *Parkway Iron & Metal Co. v. New Jersey Manufacturers Insurance Co.,* 266 *N.J.Super.* 386, 629 *A.*2d 1352 (App.Div.1993), *cert. denied,* 135 *N.J.* 302, 639 *A.*2d 301 (1994), the plaintiffs' agent was injured when the driver of a vehicle insured by the defendant negligently unloaded cargo from his vehicle. *Id.* at 388, 629 *A.*2d 1352. The exclusionary clause provided that the policy did not cover "[b]odily injury or property damage resulting from the movement of property by a mechanical device . . . not attached to the covered auto." *Id.* at 389, 629 *A.*2d 1352. The panel reviewed our language in *Harbor Bay, supra,* 119 *N.J.* at 402, 575 *A.*2d 416, and concluded that the policy exclusion was "invalid and against the public policy of this State." *Parkway, supra,* 266 *N.J.Super.* at 390, 629 *A.*2d 1352; *see also Scott v. Salerno,* 297 *N.J.Super.* 437, 445, 688 *A.*2d 614 (App.Div.1997) (holding that public policy "to provide coverage to anyone using an automobile with the owner's permission" requires invalidation of exclusion for "anyone using the automobile while parking or storing"); *Harleysville Ins. Co. v. Crum & Forster Pers. Ins.,* 246 *N.J.Super.* 503, 507, 588 *A.*2d 385 (App.Div.1990) (declaring that exclusions for persons engaged in duties for automobile business " 'violates the clear public policy of this State' " and is void) (citations omitted); *Am. Home Assurance Co. v. Hartford Ins. Co.,* 190 *N.J.Super.* 477, 486, 464 *A.*2d 1128 (App.Div.1983) (declaring that attempt to limit scope of "statutorily mandated omnibus provisions by excluding as

an additional insured thereunder any person employed ... in connection with an automobile business ... violates the clear public policy of this State and any policy provision containing such exclusion is void"); *Unsatisfied Claim & Judgment Fund Bd. v. Clifton*, 117 *N.J.Super.* 5, 8, 283 *A.*2d 350 (App.Div.1971) (concluding that the exclusionary clause was "an invalid attempt to limit the scope of protection intended to be afforded to persons using the vehicle with the permission of the named insured").

Recently, in *Palisades Safety & Insurance Association v. Bastien*, 175 *N.J.* 144, 146, 814 *A.*2d 619 (2003), we addressed the availability of personal injury protection benefits when the insured made a material misrepresentation to the insurer on the application. In that case, the insured falsely represented that he was single and the sole driver of two vehicles. *Ibid.* The policy expressly excluded coverage for any person misrepresenting a material fact in the application. *Ibid.* Subsequently, the insured's wife and her mother were injured in an automobile accident while driving a covered vehicle. *Id.* at 147, 814 *A.*2d 619. After both filed for benefits under the policy, Palisades filed an action to declare the policy void as to the wife and to limit the benefits to the mother to the statutory minimum. *Ibid.* The trial court and the Appellate Division ruled in favor of Palisades. In affirming that judgment, we made clear that

> although the company may rescind the policy, thereby disentitling Leonel to any PIP coverage as the named insured, that does not mean that it escapes liability in respect of innocent, third-party members of the public whose protection is a paramount concern of the PIP, no-fault system. *Compare Lovett [v. Alan Lazaroff & Company], supra,* 244 *N.J.Super.* [510] at 513, 582 *A.*2d 1274 (denying to resident son, injured while driving his own uninsured vehicle, PIP coverage as additional insured under mother's void policy), *with Fisher v. N.J. Automobile Full Ins. Underwriting Ass'n,* 224 *N.J.Super.* 552, 557–58, 540 *A.*2d 1344 (App.Div.1988) (requiring insurer to provide minimal third-party PIP benefits to passenger, injured in insured vehicle, notwithstanding that policy on vehicle was declared void *ab initio*). The narrow question here is how to treat a resident spouse, whom we assume was innocent of the intentional misrepresentations of her spouse, under her household's voided automobile insurance policy.
>
> [*Id.* at 149–50, 814 *A.*2d 619.]

Ultimately, we found the "public policy that requires an insurer to pay to innocent third parties injured in automobile accidents minimum PIP benefits available under our compulsory insurance requirements does not apply to a resident spouse." *Id.* at 152, 814 *A.*2d 619.

Our review of the treatment of this issue by courts in other jurisdictions illustrates that the great majority favor coverage over exclusions that conflict with an omnibus liability insurance requirement. Recently, the Oklahoma Supreme Court invalidated an automobile insurance policy provision that excluded liability coverage while an insured vehicle was being "repaired ... or engaged in any way in a car business." *Tapp v. Perciful,* 120 *P.*3d 480, 481 (Okla.2005). The insured's vehicle was being repaired when it lurched forward and struck the plaintiff. *Id.* at 481. Considering the mandatory liability insurance statute and its purpose of protecting injured third parties, the court held that the public policy of the "compulsory insurance law plainly overrides contrary private agreements to restrict coverage whenever the contractual strictures do not square with the purposes" of the insurance law. *Id.* at 483.

In *Salamon v. Progressive Classic Insurance Co.,* 379 *Md.* 301, 841 *A.*2d 858 (2004), Maryland's highest court addressed whether the so-called pizza exclusion, which denied coverage if the insured driver was delivering "property for compensation at the time of the accident," was enforceable. *Id.* at 860. The court invalidated the exclusion, finding it incompatible with a state statute that required minimum insurance coverage for automobiles. *Id.* at 864–68.

In *Marcus v. Hanover Insurance Co.,* 740 *So.*2d 603 (La.1999), the Louisiana Supreme Court considered whether a business use exclusion violated public policy. In that case, the insured was driving his vehicle in the scope of his employment when he allegedly caused an automobile accident. *Id.* at 604–05. In the subsequent action against the insured, his insurance company, Hanover, denied coverage based on the business use exclusion in

the policy. *Ibid.* After finding that the exclusion was unambiguous, the court held that the business exclusion was contrary to the state's omnibus statute. *Id.* at 608. The court reasoned that because the purpose of the omnibus statute was to provide compensation for persons injured by the operation of an insured vehicle, it would be "[a]n anomalous result ... if the rights of third parties, for whose protection the law was adopted, could be defeated by the private agreement of two parties." *Ibid.*; *see also Universal Underwriters Ins. Co. v. Am. Motorists Ins. Co.*, 541 *F.Supp.* 755, 761 (N.D.Miss.1982) (holding automobile use exclusion contrary to financial responsibility laws and, therefore, invalid). *Exchange Cas. & Sur. Co. v. Scott*, 56 *Cal.*2d 613, 15 *Cal.Rptr.* 897, 364 *P.*2d 833, 839 (1961) (holding exclusion contravenes public policy and, therefore, is unenforceable); *Smith v. Se. Fid. Ins. Co.*, 258 *Ga.* 15, 365 *S.E.*2d 105, 107 (1988) (holding business use exclusion contrary to statute requiring minimum coverage and, therefore, invalid); *DeWitt v. Young*, 229 *Kan.* 474, 625 *P.*2d 478, 482 (1981) (holding automobile business exclusion contrary to compulsory insurance laws and, therefore, unenforceable); *Nationwide Mut. Ins. Co. v. Aetna Life & Cas. Co.*, 283 *N.C.* 87, 194 *S.E.*2d 834, 838 (1973) (holding automobile use exclusion is against public policy as expressed in financial responsibility laws and, therefore, invalid); *Matter of Liberty Mut. Ins. Co. (Hogan)*, 82 *N.Y.*2d 57, 603 *N.Y.S.*2d 409, 623 *N.E.*2d 536, 539 (1993) (holding policy provision excluding coverage for vehicle used to carry persons or property for a fee invalid); *Pa. Nat'l Mut. Cas. Inc. Co. v. Parker*, 282 *S.C.* 546, 320 *S.E.*2d 458, 461 (Ct.App.1984) (holding business use exclusion contrary to statute requiring minimum coverage and, therefore, invalid). *But see Progressive Univ. Ins. Co. of Illinois v. Liberty Mut. Fire Ins.*, 215 *Ill.*2d 121, 293 *Ill.Dec.* 677, 828 *N.E.*2d 1175, 1186 (2005) (holding food delivery exclusion enforceable despite mandatory insurance law); *United Servs. Auto. Ass'n v. Reilly*, 122 *Or.App.* 459, 858 *P.*2d 457, 465–66 (1993) (holding exclusion for business use of non-owned vehicle not contrary to financial responsibility laws); *Murray v. Remuck*, 108 *R.I.* 179, 273 *A.*2d 491, 494 (1971) (holding automobile business

exclusion not contrary to public policy or minimum statutory requirements).

We are convinced that the legislative policy embodied in our statutes of compensating injured third parties by requiring all New Jersey motorists to carry compulsory insurance overrides the business exclusion in the Proformance policy. We are in accord with the view expressed by the Louisiana Supreme Court in *Marcus, supra,* 740 *So.*2d at 608, that is equally applicable to our insurance law:

> The statutory scheme is intended to ... attach financial protection to the vehicle regardless of the purpose for which the vehicle is being operated. Similarly, the goal of all liability policies, which is to benefit injured persons and to give protection and coverage to all insureds, cannot be realized if the instant exclusion is allowed to be enforced. Further, if we were to sanction the exclusion at issue, motorists would be allowed to drive in and out of coverage, depending on the purpose of a particular exclusion, which would wreak havoc on the legislature's goal in enacting an orderly and comprehensive scheme designed for the protection of injured victims of careless drivers.
>
> [*Ibid.*]

In brief, because the protection of innocent third parties is a primary concern of our personal injury no-fault system and because the business use exclusion in the Proformance policy contravenes that concern, the exclusion will not be enforced in respect of innocent third parties.

## V.

We turn now to the question whether the stated policy limit of $100,000 in the Proformance policy applies or whether the minimum required statutory limits should be read into the policy.

In *Marotta v. New Jersey Automobile Full Insurance Underwriting Assn.,* 280 *N.J.Super.* 525, 656 *A.*2d 20, *aff'd,* 144 *N.J.* 325, 676 *A.*2d 1064 (1996), we approved our Appellate Division's conclusion that in an equivalent setting, the policy was required to provide the minimum coverage mandated by our compulsory liability insurance law. There, the insured misrepresented himself as a New Jersey resident when he applied for a $500,000 single-limit automobile policy. *Id.* at 526, 656 *A.*2d 20. The insured was involved in an accident in Philadelphia, Pennsylvania, and a per-

sonal injury complaint was filed against him as a result. *Id.* at 526–27, 656 *A.*2d 20. After investigation, the insured's insurance carrier concluded that the insured had misrepresented facts that rendered the policy void. *Id.* at 527, 656 *A.*2d 20. The insurance company filed a complaint seeking a declaration that it had no financial obligation under its liability policy or, alternatively, that the policy should be limited to the statutorily-mandated insurance of $15,000 per person to $30,000 per accident. *Ibid.* The trial court held that the policy limit of $500,000 was required, but the Appellate Division reversed. *Id.* at 532, 656 *A.*2d 20. The panel reasoned that an injured third party "has the right to expect that all other drivers will be insured to the extent required by compulsory insurance," and that additional protection may be covered by a vehicle owner's ability to "purchase uninsured/underinsured coverage through the owner's own insurance company." *Ibid.* We affirmed that judgment "substantially for the reasons expressed in the opinion of the Appellate Division." *Marotta, supra,* 144 *N.J.* at 326, 676 *A.*2d 1064; *see also Palisades, supra,* 175 *N.J.* at 149–50, 814 *A.*2d 619.

We find no justification to reach a different result here. The business pursuits exclusion is contrary to public policy to the extent that it denies to an injured third party the minimum coverage required by law. Other states also have also adopted this approach. *See* 29 *A.L.R.*2d 817 (listing cases adopting this approach); *see also Marcus, supra,* 740 *So.*2d at 610–11 (holding limits of statute rather than policy apply); *Tapp, supra,* 120 *P.*3d 480 at 483. We hold that the Proformance policy must provide the statutorily required minimum limits of coverage for the accident.

## VI.

The judgment of the Appellate Division as modified is affirmed.

*For Affirmance as Modified*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.