**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5393-16T4

NORMA BLANCO-SANCHEZ,

    Plaintiff-Appellant,

v.

PERSONAL SERVICE
INSURANCE COMPANY,

    Defendant-Respondent.

_____

Argued October 23, 2018 – Decided February 28, 2019

Before Judges Rothstadt and Gilson.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2607-16.

Lars S. Hyberg argued the cause for appellant (Hyberg, White & Mann, attorneys; Lars S. Hyberg, on the briefs).

Jared P. Kingsley argued the cause for respondent (Methfessel & Werbel, PC, attorneys; Jared P. Kingsley, on the brief).

PER CURIAM

In this appeal we are asked to determine whether the driver of an automobile who operates a vehicle with an owner's permission that was given with knowledge that the driver never held a license, is a permissive user who may recover personal injury protection (PIP) benefits under the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35, the "No Fault Act." For the reasons that follow, we conclude that as a matter of public policy, an owner cannot give permission to a driver who is known to be unlicensed and, therefore, the unlicensed driver is barred from any recovery under the No Fault Act for PIP benefits under N.J.S.A. 39:6A-7(b)(2) (authorizing the exclusion from coverage of any person who "was occupying or operating an automobile without the permission of the owner or other named insured").

Here, plaintiff Norma Blanco-Sanchez filed a complaint against her mother Vilma Sanchez's automobile insurance carrier, defendant Personal Service Insurance Company, after it denied plaintiff's claim for PIP benefits to cover the cost of her medical treatment for injuries she sustained in an auto accident. The accident occurred when plaintiff drove her mother's vehicle without having ever been licensed to drive. Plaintiff appeals from the Law Division's order granting defendant summary judgment after the motion judge found that PIP coverage was not available to unlicensed drivers. We affirm.

2

The facts, viewed in the light most favorable to plaintiff, are generally undisputed. On December 8, 2014, plaintiff was involved in a motor vehicle accident. On the morning of the accident, Sanchez was driven to work and left her car on the street. While at work, she remembered that the street sweeper would be cleaning the roads that day and called plaintiff to have her car moved to avoid getting a ticket. At the time, Sanchez did not think that plaintiff would move the car as she knew that plaintiff did not have a driver's license and had never driven Sanchez's car.

In response to her mother's call, plaintiff said that she was going to get someone to move the car, as she had done previously when her mother made similar requests. However, when she could not find anyone to move the car, she decided to do it herself. The accident occurred while plaintiff was attempting to relocate the car. Plaintiff sustained shoulder, neck, and arm injuries in the accident and incurred medical bills for her treatment.

At the time of the accident, Sanchez's insurance policy with defendant provided PIP coverage for up to $15,000 in covered medical expenses. The policy specifically defined an "eligible injured person" as "[t]he named insured or any relative of the named insured, if the named insured or relative sustains bodily injury . . . [a]s a result of any accident while occupying, using, entering

3

into, or alighting from a private passenger auto . . . ." It excluded from coverage the "bodily injury of any person at the time of the accident . . . [who] [w]as operating or occupying a private passenger auto without the permission of the owner or other named insured."

Plaintiff filed an application for PIP benefits, which defendant denied because plaintiff did not have Sanchez's permission to operate the vehicle. Defendant specifically stated that "since the driver . . . was unlicensed, it would be impossible for the insured to give permission to a person who is not legally eligible to drive."

Plaintiff filed a complaint for declaratory relief, alleging that "[t]he denial of benefits [was] wrongful as the issue of permission is a factual [determination], not a legal argument." She claimed there was "[n]o statutory or regulatory authority" that stated that an insured could not grant permission to a person without a license. She requested that judgment be entered "declaring that [defendant] . . . is required to provide automobile [PIP] benefits[,]" including payment of plaintiff's "medical expenses, plus cost of suit, attorney fees, [and] interest . . . ."

Defendant filed its answer, admitting to issuing a policy that included PIP coverage, but denying that plaintiff was entitled to coverage. Among its

defenses, defendant stated that "[a]ny and all claims of the plaintiff are barred due to the fact that plaintiff did not have permission to operate the vehicle."

Defendant subsequently filed a notice of motion for summary judgment and plaintiff cross-moved for the same relief. In her motion, plaintiff did not dispute that she never had a license and Sanchez never argued that she was unaware of that fact.

On June 23, 2017, the parties appeared for oral argument. After considering their arguments, the motion judge granted defendant's motion, denied plaintiff's cross-motion, and dismissed plaintiff's complaint. The judge placed his reasons on the record, which he began by finding that Sanchez gave plaintiff "implied permission" to drive her vehicle. He then stated that the question before him was

> whether or not the mother could legitimately and legally confer on the plaintiff the right to operate that vehicle under the circumstances of this case where the plaintiff was not a licensed driver and the mother knew that she was not a licensed driver, albeit she says she forgot that she was not a licensed driver at the time of the conversation.

Reviewing the case law argued by the parties, the judge concluded "whether it's unlicensed or suspended, the fact is that the plaintiff cannot benefit from his or her own . . . illegal conduct." The judge stated that while the PIP

5

portion of defendant's policy did not contain a specific exclusion for unlicensed drivers, "the argument is [not] whether it contains an exclusion . . . you can't give permission to extend the coverage in a situation where they couldn't have [gotten] coverage to begin with." This appeal followed.

On appeal, plaintiff argues that she is entitled to PIP benefits as a resident relative under N.J.S.A. 39:6A-4, and that she was specifically given permission to use the car by her mother, making her a "permissive user" of the vehicle. Plaintiff contends that denying her those benefits inserts a provision not found in the statute or PIP policy that improperly limits an insured's or owner's ability to give a third party permission to use an insured vehicle. We disagree.

"We review an order granting summary judgment 'in accordance with the same standards as the motion judge.'" Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). "Such a motion will be granted if the record demonstrates that there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Ibid. (quoting R. 4:46-2(c)).

An award of summary judgment based upon a trial court's "statutory interpretation is a legal issue requiring our de novo review. Accordingly, 'we accord no deference to the trial judge's interpretive conclusions.'" Leggette v.

Gov't Emps. Ins. Co., 450 N.J. Super. 261, 264 (App. Div. 2017) (quoting Brick Twp. PBA Local 230 v. Twp. of Brick, 446 N.J. Super. 61, 65 (App. Div. 2016)). The same standard applies to our review of a trial court's interpretation of an insurance policy on a motion for summary judgment. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).

On appeal, there is no question that neither the PIP statutes nor defendant's policy expressly excluded PIP coverage for injuries plaintiff sustained while driving her mother's vehicle with permission, but without a license. Under N.J.S.A. 39:6A-4, "[e]very insurance policy must include PIP benefits, which guarantee 'without regard to fault,' medical expense coverage for the named insured and members of his or her household." Perrelli v. Pastorelle, 206 N.J. 193, 201 (2011) (quoting Caviglia v. Royal Tours of Am., 178 N.J. 460, 466 (2004)).

The required coverage must be "the primary coverage for the named insured and any resident relative in the named insured's household who is not a named insured under an automobile insurance policy of his own." N.J.S.A. 39:6A-4.2. This "first-party coverage was 'intended to serve as the exclusive remedy for payment of out-of-pocket medical expenses arising from an automobile accident.'" Walcott v. Allstate N.J. Ins. Co., 376 N.J. Super. 384,

7

388 (App. Div. 2005) (permitting a PIP claim by "an insured motorist who was intoxicated at the time of the accident") (quoting Caviglia, 178 N.J. at 466. "[T]he scope of coverage of a PIP policy should be approached liberally, N.J.S.A. 39:6A-16, and exclusions from coverage, narrowly interpreted." Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 106 (2009) (Long, J., dissenting)).

N.J.S.A. 39:6A-7 delineates specific individuals that "insurers may exclude" from PIP coverage. Included among them are persons who were "occupying or operating an automobile without the permission of the owner or other named insured." N.J.S.A. 39:6A-7(b)(2). "The statute clearly and unambiguously directs that an insurer may deny the extension of PIP benefits to any person who, at the time of the accident, 'was occupying or operating an automobile without the permission of the owner or other named insured.'" Hardy, 198 N.J. at 103 (emphasis in original) (quoting N.J.S.A. 39:6A-7(b)(2)).

The clear language of the statute, therefore, authorizes defendant's policy's exclusion. Ibid. "When the terms of the insurance flow from a statute, '[t]he statute determines the legal operation of the contract.' . . . That is, when the plain language of a policy provision is based on statutory authority, the policy must be interpreted and construed in a manner consistent with the statute." Id. at 102 (alteration in original) (quoting Saffore v. Atl. Cas. Ins. Co.,

21 N.J. 300, 310 (1956)). A policy's "exclusionary provisions 'are presumptively valid and will be given effect if "specific, plain, clear, prominent, and not contrary to public policy."'" Ibid. (quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)).

Because defendant's policy did not exclude PIP coverage for permissive drivers who were unlicensed, we turn to the State's public policy to determine if it bars recovery by plaintiff here. We begin by observing that it is beyond cavil that public policy requires all drivers to be licensed. See N.J.S.A. 39:3-29 (requiring a driver's license) and N.J.S.A.39:3-40 (making the operation of a motor vehicle without one an offense). That policy is also incorporated into New Jersey's automobile insurance scheme, which, while mandating that liability and PIP coverage be secured by vehicle owners under N.J.S.A. 39:6A-4 and N.J.S.A. 39:6B-1, allows insurers to decline to issue policies to drivers whose licenses have been revoked or suspended. See N.J.S.A. 17:33B-13(b) (defining those ineligible from coverage) and N.J.S.A. 17:29C-7 (allowing for nonrenewal of policies for individuals whose "driver's license . . . has been under suspension or revocation during the policy period"); see also Martin v. Rutgers Cas. Ins. Co., 346 N.J. Super. 320, 326 (App. Div. 2002).

Despite that public policy, the Supreme Court has concluded that public policy dictates that there be coverage for third-party liability claims made by innocent third parties injured as a result of the negligence of an unlicensed permissive driver of an insured's vehicle. See Proformance Ins. Co. v. Jones, 185 N.J. 406, 413 (2005); see also Burke v. Auto Mart Inc., 37 N.J. Super. 451, 453 (App. Div. 1955). PIP coverage claims do not involve the same concerns.

PIP coverage is different from third-party liability coverage. It involves claims made by the owner, insured, or individuals that operate a vehicle with permission. "PIP coverage is first-party coverage." Garden State Fire & Cas. Co. v. Commercial Union Ins. Co., 176 N.J. Super. 301, 305 (App. Div. 1980); see also Rutgers Cas. Ins. Co. v. LaCroix, 194 N.J. 515, 523 (2008). Based on that distinction, in Martin, we enforced a PIP policy's that "excluded coverage for bodily injury sustained by a person '[u]sing a vehicle without a reasonable belief that that person is entitled to do so.'" Martin, 346 N.J. Super. at 323 (alteration in original).

The plaintiff in Martin was an unlicensed driver of a vehicle owned by her fiancé's stepfather, who did not know her driver's license had been revoked. Ibid. There was a one-car collision. Id. at 321-22. The unlicensed driver sought PIP and uninsured motorist (UM) coverage for her injuries under the stepfather's

policy. She contended that the insurance company's "use of the term 'reasonable belief' and its definition of that term [were] an unwarranted expansion of . . . [N.J.S.A. 39:6A-7's] limited exemptions." Id. at 323-24. We disagreed and held that even if the plaintiff had consent to drive the vehicle, she could not reasonably believe that she was entitled to drive any car because she was unlicensed and therefore not entitled to PIP or UM coverage for her injuries. Id. at 325-26. We stated, as a matter of law, "an individual who knows that her driver's license has been suspended and remains suspended, could form no 'reasonable belief' that she had permission to drive a vehicle." Id. at 324-25.

Although we denied coverage to the unlicensed driver, we distinguished the claim from a third-party claim. We stated:

> We also note the very limited question presented to us. We are not confronted with a claim for PIP coverage put forth by an unwitting, injured passenger. Neither are we presented with a claim for liability coverage by an individual injured as a result of a collision with a vehicle driven by plaintiff. Rather, we are asked to conclude that an individual who had to know she was not entitled to drive this automobile is entitled to PIP coverage and UM coverage for injuries she received while driving with complete disregard of her lack of entitlement.
>
> [Id. at 325 (emphasis added).]

11

Although we recognize that defendant's policy here did not contain any exclusion from PIP coverage for a permissive user who drove "without a reasonable belief that that person is entitled to do so," we conclude that as matter of public policy the reasoning in Martin is equally applicable to the facts in this case. See id. at 323. To hold otherwise would require insurer's to provide coverage for unlicensed individuals who by definition are ineligible for coverage and contravene the State's public policy. See Reilly v. AAA Mid-Atl. Ins. Co. of N.J., 194 N.J. 474, 478, 495 (2008) (stating the general proposition that an entity cannot exceed the scope of its statutory authority, and is therefore, restricted from overstepping the limitations imposed on it by the State).

We reject as inapposite plaintiff's reliance upon the Supreme Court's holding in Matits v. Nationwide Mut. Ins. Co., 33 N.J. 488 (1960) that dealt with an accident caused by a permissive user who drove while intoxicated. In that case, the Court "first adopted the initial permission rule." Proformance Ins. Co. 185 N.J. at 412.[1] It "concluded that the permittee's 'deviation from the purpose

---

[1] The rule states

> that 'if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a

for which she borrowed the vehicle did not annul the protection afforded her and the injured plaintiffs by the omnibus clause of [the] policy.'" Ibid. (alteration in original) (quoting Matits, 33 N.J. at 497). Plaintiff argues that if coverage was afforded to the licensed, but intoxicated driver in Matits, there is no public policy reason to bar her recovery here. We find that argument to be without any merit as we are confronted here, not with a third-party claim against a licensed driver, but with a first-party claim by plaintiff, who was never licensed to operate any motor vehicle for any purpose.

We are satisfied from our de novo review that the trial court here correctly dismissed plaintiff's complaint because neither Sanchez's permission nor defendant's issuing her a policy of insurance gave plaintiff an unlimited right to

---

permissive use within the terms of . . . an automobile liability insurance policy.

[Jones, 185 N.J. at 412 (quoting Matits, 33 N.J. at 496-97).]

Consistent with our public policy of protecting innocent third parties, "[u]nderlying the initial permission rule is the intent 'to assure "that all persons wrongfully injured have financially responsible persons to look to for damages" because "a liability insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured."'" Id. at 413 (quoting Verriest v. INA Underwriters Ins. Co., 142 N.J. 401, 414 (1995)).

A-5393-16T4

operate an automobile knowing that she was unlicensed and then to assert a first-party claim under defendant's policy.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14