908 A.2d 232 (2006)
GARY POTENZONE, Plaintiff
v.
ANNIN FLAG COMPANY and LE TRAN, Defendants-Third-Party Plaintiffs-Respondents,
v.
PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, Third-Party Defendant-Appellant.
No. A-3267-05T5
Superior Court of New Jersey, Appellate Division
Argued June 6, 2006
Decided July 17, 2006
Before Judges Payne, Axelrad and Sabatino.
Kenneth M. Portner argued the cause for appellant (Weber, Gallagher, Simpson, Stapleton, Fires & Newby, attorneys; Mr. Portner on the brief).
Joseph J. Michalowski argued the cause for respondents (Chase, Kurshan, Herzfeld & Rubin, attorneys; Mr. Michalowski of counsel and on the brief).
The opinion of the court was delivered by
SABATINO, J.S.C. (temporarily assigned).
The narrow question in this appeal is the amount of insurance coverage available in circumstances in which a commercial automobile policy's exclusion for "loading and unloading" activities is nullified as contrary to our State's omnibus automobile statute, N.J.S.A. 39:6B-1. Specifically, when such an exclusion in the policy is invalidated, is the coverage the face amount of the insurance policy (here, $500,000), or is it the statutory minimum coverage (namely, $15,000)?
The Law Division concluded, after hearing motion arguments, that the coverage amount in this scenario is $500,000, the face amount of the policy that had contained the improper exclusion. We granted leave to appeal and now reverse, based upon the New Jersey Supreme Court's recent and materially-indistinguishable opinion in Proformance Ins. Co. v. Jones, 185 N.J. 406 (2005).

I.
The parties in interest on this appeal are appellant Pennsylvania National Insurance Company ("Penn National") and respondents Annin Flag Company ("Annin Flag") and Annin Flag's employee Le Tran. The case arises out of a serious workplace accident that occurred on May 22, 2003. On that date plaintiff Gary Potenzone, a worker employed by the Apollo Flag Company ("Apollo Flag"), drove a truck owned by Apollo Flag to pick up merchandise at the premises of defendant Annin Flag. After arriving at Annin Flag's premises, Potenzone stood near his company's truck to oversee the loading operations. While Tran was moving the items with a forklift onto Potenzone's truck, he struck Potenzone in the back, either with the forklift itself or with a pallet.
Potenzone was seriously injured, and in September 2003 he filed a personal injury action in the Law Division against Annin Flag and Tran. Those defendants, in turn, brought a third-party complaint for coverage against Apollo Flag's insurer Penn National.
At the time of Potenzone's accident, Annin Flag and Tran were insured under a $1 million policy with Atlantic Mutual Insurance Company ("Atlantic Mutual"). Apollo Flag, on the other hand, had a business auto policy with Penn National, with a face amount of coverage of $500,000. Atlantic Mutual provided Annin Flag and Tran with a defense to Potenzone's lawsuit, subject to those insureds' third-party claims for coverage against Penn National.
Prior to trial Potenzone settled his claims against defendants Annin Flag and Tran for $850,000. The settlement funds were paid on a provisional basis by the two insurance carriers, with Penn National advancing $500,000 and Atlantic Mutual advancing $350,000, contingent on the court's ultimate disposition of the coverage claims against Penn National.

II.
A resolution of the remaining coverage dispute requires us to consult, as an initial matter, the pertinent language set forth in Penn National's insurance policy. In the liability coverage portion of that policy, the following definition appears under the heading, "Who is an insured?":
b. Anyone else, while using with your permission a covered "auto" you own, hire or borrow, except:
. . . .
(4) Anyone other than your "employees," partners . . ., members . . ., or a lessee or borrower or any of their employees while moving property to or from a covered "auto."
[Emphasis added.]
It is undisputed that Annin Flag's employee Tran was "using," with Apollo Flag's permission, Apollo Flag's company vehicle by his conduct in loading that vehicle with merchandise. This permissive use seemingly would place Tran and Apollo Flag within the scope of the broad definition of "insureds" under the Penn National policy. However, Penn National initially took the position in this litigation that such coverage was excluded by the above-quoted language of sub-paragraph (b)(4), which carves out an exception for non-employees of Apollo Flag for their actions "while moving property to or from" a covered automobile. This exclusionary term would appear to have the effect of denying coverage to Annin Flag and Tran for the latter's activity in "moving property" with a forklift to Apollo Flag's covered vehicle.
Eventually, however, Penn National conceded that its "moving property" exclusion was unenforceable in this case because of New Jersey's statutory scheme and case law requiring coverage for so-called "loading and unloading" activities. In particular, N.J.S.A. 39:6B-1, the omnibus automobile insurance statute, states:
Every owner or registered owner of a motor vehicle registered or principally garaged in this State shall maintain motor vehicle liability insurance coverage, under provisions approved by the Commissioner of Banking and Insurance, insuring against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of a motor vehicle. . . .
Our courts have interpreted the omnibus statute to require, among other things, that an automobile insurer doing business in New Jersey afford a minimum level of coverage to persons who are "using" a covered vehicle, regardless of their employment status. See State Farm Mut. Auto Ins. Co. v. Zurich Am. Ins. Co., 62 N.J. 155 (1973). Courts have broadly construed the notion of "use" in the statute in order to promote the overriding legislative policy of assuring financial protection for innocent victims of motor vehicle accidents. Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 293 (1974).
Sixteen years ago in Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Co., 119 N.J. 402, 408 (1990), the Supreme Court held that the omnibus statute required coverage for persons who are "loading and unloading" a covered vehicle, and that "any contractual attempt to exclude [such] coverage for an additional insured will be held invalid." In this respect the Court adopted the reasoning of an earlier decision of our court in Bellafronte v. General Motors Corp., 151 N.J. Super. 377, 382-383 (App. Div.), certif. denied, 75 N.J. 533 (1977) (omnibus statute requires "loading and unloading" coverage, notwithstanding exclusionary policy language to the contrary). See also Kennedy v. Jefferson Smurfit Co., 147 N.J. 394 (1997)(extending Ryder's coverage obligation to a situation in which the vehicle was unloaded with a defective pallet); Parkway Iron & Metal Co. v. New Jersey Mfrs. Ins. Co., 266 N.J. Super. 386 (App. Div. 1993), certif. denied, 135 N.J. 302 (1994) (invalidating provision in insurance policy that attempted to exclude coverage for injuries arising from the movement of a mechanical device used in loading or unloading a covered vehicle).
There being no doubt, therefore, that Penn National's policy must insure the conduct of Tran in loading Apollo Flag's truck, the sole issue before the court is the amount of such coverage afforded to Tran and to his employer Annin Flag, which would be exposed to vicarious liability for Tran's negligent acts. Annin Flag and Tran contend that the coverage should be the full amount of the Penn National policy, i.e., $500,000. Penn National contrarily argues that its coverage should only be fixed at the minimum amount prescribed within the omnibus statute at N.J.S.A. 39:6B-1. These competing positions came to a head in the trial court, with Annin and Tran filing a motion for summary judgment against Penn National seeking the $500,000 face amount in coverage, and Penn National cross-moving to limit its coverage at $15,000.[1]
Before the motion and cross-motion were heard in the Law Division, the Supreme Court rendered its unanimous opinion in Proformance Ins. Co. v. Jones, 185 N.J. 406 (2005). Proformance involved an exclusion in an automobile insurance policy for certain "business pursuits." The insured loaned her truck, which was covered under Proformance's policy, to a relative, instructing him not to use the truck in his furniture moving business. The relative disregarded that instruction, allowing his own employee to make a furniture delivery with the truck. In the course of using the truck for that unauthorized business purpose, the driver fell asleep at the wheel, causing a collision that injured a passenger in the truck and a pedestrian. Id. at 409.
The Supreme Court in Proformance held that New Jersey's omnibus statute required the truck's insurer to cover the accident, despite the plain language in its policy excluding the use of the vehicle for business pursuits. Id. at 414-20. The Court reached that conclusion, in a fashion akin to its reasoning in the "loading and unloading" context in Ryder, because of the strong public policies embedded in the omnibus statute aimed at protecting innocent accident victims. Ibid. It therefore nullified the business pursuits exclusion, observing that "[a]n insurer must afford liability coverage in at least the amount mandated by the legislature." Id. at 415, citing State Farm, supra, 62 N.J. 155, 170 (1973).
The next question addressed by the Court in Proformance, one that is critical to the present case, was the amount of coverage owed by the insurer with the invalidated policy exclusion. The passenger and pedestrian injured in the accident had argued that the insurer should be liable for the face amount of its policy, i.e., $100,000. The Court rejected that argument, determining that the insurer was only exposed to the $15,000 minimum in coverage mandated by the omnibus statute, and noting that other states have also adopted the same approach in like circumstances. Id. at 418-419. By this reasoning, the public policies requiring invalidation of the insurer's exclusionary provision are not limitness, but rather are tied to the minimum coverage amounts prescribed by the legislature. As the Court concluded:
The business pursuits exclusion is contrary to public policy to the extent that it denies to an injured third party the minimum coverage required by law. . . . We hold that the Proformance policy must provide the statutorily required minimum limits of coverage for the accident.
[Id. at 421 (emphasis added).]
The motion judge in the present case attempted to distinguish Proformance by classifying it as a "business pursuits" exclusion case, as distinct from a case such as Ryder involving a "loading and unloading" exclusion. He also noted that the Court in Ryder had required the indemnitor, a self-insurer, to provide coverage for the full amount of its self-insurer limits rather than the $15,000 minimum prescribed by the omnibus statute. Lastly, the motion judge expressed prophylactic concerns about whether insurers might deliberately insert invalid exclusions into their policy documents as a circuitous method of reducing coverage from the face amount shown on the policies. Based on these considerations, the judge denied Penn National's cross-motion and granted summary judgment to Annin Flag and Tran, requiring Penn National to contribute the full $500,000 face amount of its policy with Apollo Flag to Potenzone's settlement.
Having carefully considered the reasoning of the motion judge and the arguments of counsel, we conclude that Proformance controls the outcome of this case, and that, accordingly, Penn National's coverage obligation to the respondents is capped at the statutory minimum of $15,000. We do so for the following reasons.
Respondent's counsel attempts to classify Proformance as a "business pursuits" case and this matter as a "loading and unloading" case, and thus distinguish that very recent opinion of our state's highest court on that basis and other assorted grounds. Yet, on close scrutiny, those arguments are unpersuasive, and no more than a recitation of distinctions without a difference. There is no logical reason why the coverage to be imputed in a scenario involving an invalid loading and unloading exclusion should be any different than one involving an invalid business pursuits exclusion. In each instance, the aims of the omnibus statute, N.J.S.A. 39:6B-1, are the same: to assure that innocent accident victims have at least $15,000 in financial protection. As the Court noted in Proformance, the exclusion at issue "is contrary to public policy to the extent that it denies to an injured third party the minimum coverage required by law." Id. at 421 (emphasis added).
We are mindful of, and can understand the motion judge's reasons for citing to, the fact that the Supreme Court in Ryder required the self-insurer there to afford coverage beyond the $15,000 statutory minimum. However, the legal responsibilities of a self-insurer, who may have, as a matter of tort law, direct liability for an injured person's claim beyond the amount of its self-insurance indemnity bond, can be fundamentally greater in degree and kind than those of an arms-length insurer such as Penn National. See Ryder, supra 119 N.J. at 412 ("[t]here is no explicit limitation on a self-insurer's liability.").[2] To the extent that Ryder nonetheless could be read to warrant a different result, we suggest that the Supreme Court's more recent opinion in Profomance must guide our disposition here.
We also discern no basis to expand Penn National's coverage responsibilities above the statutory minimum based upon the doctrine of the reasonable expectations of an insured. See Kievit v. Loyal Protective Life Ins. Co. 34 N.J. 475, 482 (1961) (policyholders are entitled to a "broad measure of protection necessary to fulfill their reasonable expectations"). Annin Flag and Tran could not have had any reasonable expectations of coverage from the insurance carrier for Apollo Flag. See also Pinto v. New Jersey Mfrs. Ins. Co., 183 N.J. 405, 411 (2005) (no reasonable expectation of coverage where plaintiff was not a "named insured"). Indeed, Annin Flag purchased its own coverage with Atlantic Mutual. Despite the serendipitous language of the Penn National policy rendering them additional insureds under that policy in a permissive use scenario, Annin Flag and Tran are otherwise, in essence, strangers to the indemnity contract between Apollo Flag and Penn National. They paid no premiums to Penn National, and are at best incidental beneficiaries.
Lastly, we have given serious consideration to the public policy concerns espoused by the motion judge, fearing circumvention by insurance carriers of their coverage limits through the deliberate insertion of invalid exclusions. While we appreciate the motion judge's concerns, we doubt that insurers would succeed in routinely engaging in such nefarious practices, given the strong regulatory powers of the Commissioner of Banking and Insurance to review policy forms for conformity with legal standards and the Commissioner's authority to take appropriate regulatory action against insurers for improper trade practices. See N.J.S.A. 17:1-15.
The judgment below is reversed, with instructions to the Law Division to enter an order in conformity with this opinion limiting Penn National's coverage to the $15,000 statutory minimum.
NOTES
[1] Penn National had also argued that its policy exclusion for loading and unloading activities was enforceable, but, as we noted above, it has since conceded that point in light of Ryder and the related case law on loading and unloading coverage.
[2] Although it does not legally affect the result, we also note the fact that a $15,000 cap on Penn National's exposure, consistent with the prescribed minimum under the omnibus statute, does not leave the innocent injured party in this case, Potenzone, without recourse. There is ample coverage for the remainder of the $850,000 settlement under Annin Flag's own policy with Atlantic Mutual. Absent such coverage, Potenzone might also pursue recovery from the assets of Annin Flag itself, and possibly even its employee Tran.