922 A.2d 745

GARY POTENZONE, PLAINTIFF, v. ANNIN FLAG COMPANY AND LE TRAN, DEFENDANTS AND THIRD–PARTY PLAINTIFFS–APPELLANTS, v. PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, THIRD–PARTY DEFENDANT–RESPONDENT.

Argued February 20, 2007—Decided June 6, 2007.

148

*Joseph J. Michalowsk,* argued the cause for appellants (*Chase Kurshan Herzfeld & Rubin,* attorneys).

*Kenneth M. Portner,* argued the cause for respondent (*Weber Gallagher Simpson Stapleton Fires & Newby,* attorneys).

Justice WALLACE, JR., delivered the opinion of the Court.

In this appeal, we must determine whether the amount of insurance coverage available in a commercial automobile policy, in which the exclusion for loading and unloading activities was void as contrary to the omnibus automobile statute, is the statutory minimum or the policy limit. The trial court found that the full policy limit applied. On appeal, relying on our decision in *Proformance Insurance Co. v. Jones,* 185 *N.J.* 406, 887 *A.*2d 146 (2005), the Appellate Division reversed and limited the insurance coverage to the statutory minimum. *Potenzone v. Annin Flag Co.,* 388 *N.J.Super.* 303, 308–10, 908 *A.*2d 232 (App.Div.2006). Based on our long-standing case law invalidating the exclusion for loading and unloading activities, we treat that exclusion as though it were not part of the policy and hold that the insurer is responsible for coverage up to the full policy limit.

I.

Plaintiff, Gary Potenzone, an Apollo Flag Company (Apollo Flag) employee, was standing near an Apollo Flag truck while supervising the loading operations when defendant Le Tran, an employee of defendant Annin Flag Company (collectively Annin Flag), struck Potenzone in the back with either the forklift or a pallet on the forklift. As a result, Potenzone filed a personal injury action for bodily injury against Annin Flag. Annin Flag was insured by Atlantic Mutual Insurance Company (Atlantic Mutual) with policy limits of one million dollars. Annin Flag also sought coverage from Apollo Flag's business automobile insurance policy issued by third-party defendant Penn National Mutual Casualty Insurance Company (Penn National) with policy limits of $500,000.

Penn National denied coverage to Annin Flag under its policy exclusion for injuries arising out of loading or unloading accidents to Apollo Flag, its employees, or persons who operate Apollo Flag vehicles with permission.

Annin Flag filed a third-party complaint against Penn National, seeking a declaration that Penn National had a duty to defend and indemnify it against Potenzone's lawsuit. Penn National filed an answer denying that it owed any duty to provide coverage. Annin Flag and Penn National each sought summary judgment. Penn National also sought alternative relief requesting that if it owed coverage to Annin Flag, its liability limit was the statutory minimum of $15,000 as required by *N.J.S.A.* 39:6B–1(a) and not the $500,000 face value of the policy. The trial court granted Annin Flag's motion for summary judgment and required Penn National to provide coverage up to its full policy limit of $500,000.

The Appellate Division granted Penn National's motion for leave to appeal. Around the same time, Potenzone settled his personal injury claim against Annin Flag for $850,000. Penn National agreed to pay $500,000, and Atlantic Mutual agreed to pay the balance of $350,000. However, the settlement agreement also directed that, in the event Penn National was successful in its appeal seeking to limit its liability to the statutory minimum, Penn National could then seek reimbursement from Atlantic Mutual for the amount it paid in excess of $15,000.

The sole issue on appeal was whether Penn National's insurance coverage should be limited to the statutory minimum or extended to the face amount of its insurance policy. *Potenzone, supra,* 388 *N.J.Super.* at 307, 908 *A.2d* 232. In its appeal, Penn National did not contest that "its moving property exclusion was unenforceable in this case because of New Jersey's statutory scheme and case law requiring coverage for so-called loading and unloading activities." *Id.* at 306, 908 *A.2d* 232 (internal quotations marks omitted). The Appellate Division reversed, concluding that *Proformance* controlled the disposition of the appeal, and, therefore, Penn National was required only to provide coverage up to the

statutory minimum of $15,000.  *Id.* at 309–10, 908 *A.*2d 232.  We granted Annin Flag's petition for certification.  188 *N.J.* 493, 909 *A.*2d 727 (2006).

## II.

Annin Flag argues that Penn National's coverage obligation for accidents arising out of loading or unloading operations is the contractual amount stated in the insurance policy.  It contends that the Court's decision in *Proformance* is not applicable and should be limited to only those cases where an innocent third party will be left with no remedy because an insurer properly denied liability coverage due to the misconduct of an insured. Annin Flag asserts that it would be unreasonable to permit Penn National to rely on an obviously invalid loading and unloading exclusion to reduce its contractual coverage obligation to the statutory minimum amount of $15,000.  Annin Flag adds that it would thwart the public policy goals of the Legislature if insurers could vastly limit their coverage by including invalid policy exclusions that would cause the policy limits to be deemed reduced to the statutory minimum, irrespective of what the insured paid for the policy.  Finally, Annin Flag notes that other Appellate Division decisions, which it claims have been cited with approval by this Court, involving invalid loading and unloading exclusions, have enforced the policy terms, rather than limited the liability coverage to the statutory minimum.

In contrast, Penn National argues that the decision in *Proformance* settled the issue and that its coverage should be limited to the statutory minimum because the loading and unloading exclusion was invalid.  In response to Annin Flag's argument that *Proformance* should be limited to cases in which an innocent party is denied coverage as a result of the insured's misconduct, Penn National claims that the same outcome would have resulted in that case even if the named insured in *Proformance* had given permission to the additional insured to use the vehicle in his business. Further, Penn National contends that *Proformance* should be

interpreted to conclude that insurers can properly deny coverage for an otherwise covered use as long as that denial still requires coverage for the statutory minimum. Finally, Penn National asserts that the decision below is not in conflict with other Appellate Division decisions or with decisions of this Court.

## III.

### A.

Every owner of an automobile registered in New Jersey must have liability insurance coverage. *N.J.S.A.* 39:6B–1(a). Insurers must afford that liability insurance coverage at no less than the minimum amounts set forth by the Legislature. *Proformance, supra,* 185 *N.J.* at 415, 887 *A.*2d 146 (citing *State Farm Mut. Auto. Ins. Co. v. Zurich Am. Ins. Co.,* 62 *N.J.* 155, 170, 299 *A.*2d 704 (1973)). The statute requires at least $15,000 coverage for bodily injury or death to any person in an accident. *N.J.S.A.* 39:6B–1(a).

We have noted that New Jersey's statutory scheme evinces a strong legislative policy in favor of protecting innocent accident victims. *Gazis v. Miller,* 186 *N.J.* 224, 231–32, 892 *A.*2d 1277 (2006); *Proformance, supra,* 185 *N.J.* at 414–15, 887 *A.*2d 146. Nevertheless, an exclusion may be enforced if it is "specific, plain, clear, prominent, and not contrary to public policy." *Doto v. Russo,* 140 *N.J.* 544, 559, 659 *A.*2d 1371 (1995) (citations omitted). If there is ambiguity in the exclusion, it will be construed narrowly and the insurer bears the burden of proving that the exclusion should be enforced. *Proformance, supra,* 185 *N.J.* at 415, 887 *A.*2d 146 (citing *Princeton Ins. Co. v. Chunmuang,* 151 *N.J.* 80, 95, 698 *A.*2d 9 (1997)). Further, a policy exclusion "that conflicts with statutorily mandated coverage will not be enforced." *Ibid.*

### B.

Our courts have long recognized "that the obligation to provide coverage in a loading and unloading accident arises from statute

and therefore cannot be limited by contract." *Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp.*, 119 *N.J.* 402, 407, 575 *A.*2d 416 (1990) (internal quotation marks omitted) (citing *Bellafronte v. Gen. Motors Corp.*, 151 *N.J.Super.* 377, 381–82, 376 *A.*2d 1294 (App.Div.), *certif. denied*, 75 *N.J.* 533, 384 *A.*2d 513 (1977)). In *Ryder*, an employee was injured while unloading Ryder's truck with the assistance of a Harbor Bay forklift operator. *Id.* at 404, 575 *A.*2d 416. The Ryder employee filed a complaint against Harbor Bay, which in turn sought coverage from Ryder as an additional insured. *Ibid.* Based on the decision in *Bellafronte*, the trial court granted Harbor Bay's summary judgment motion and required Ryder to provide coverage. *Id.* at 404–05, 575 *A.*2d 416.

On appeal, we approved of the holding in *Bellafronte* and stated that:

> *Bellafronte* makes clear the broad scope of coverage that an insurer must provide for accidents arising during loading and unloading. Because of statutorily-imposed omnibus requirements, any contractual attempt to exclude coverage for an additional insured will be held invalid. Moreover, all parties subject to omnibus coverage requirements—both self-insurers and those with liability policies—must provide coverage. What *Bellafronte* does not address, however, is the limitation, if any, on the amount of coverage that an insurer must provide in the context of a loading and unloading accident.
>
> [*Id.* at 408, 575 *A.*2d 416 (emphasis omitted).]

In deciding the amount of coverage issue left unanswered in *Bellafronte*, we stated that "[u]nder the terms of an ordinary liability policy, an insurer would be required to provide coverage in a loading and unloading accident to the limits of its policy— often an amount greater than the statutory minimum." *Id.* at 413, 575 *A.*2d 416 (internal quotation marks omitted). We reasoned that if the statutory minimum were imposed for a self-insurer, a "self-insurer would be placed at a distinct advantage over one maintaining a liability policy insofar as its liability would be limited by *N.J.S.A.* 39:6B–1—a result that finds no justification in the self-insurance scheme or the insurance-coverage policies of this state." *Ibid.* We found no reason to distinguish between the two types of insurance coverage and concluded that Ryder's liability for "an additional insured during a loading or unloading

accident" was not limited by the "minimum amounts of compulsory insurance mandated by *N.J.S.A.* 39:6B–1." *Id.* at 414, 575 *A.*2d 416 (internal quotation marks omitted).

In the present matter, the Penn National insurance policy provides liability coverage to "an insured" who becomes legally obligated to pay damages as a result of a "bodily injury ... caused by an accident and resulting from the ownership, maintenance or use of a covered auto." (Internal quotation marks omitted). An "insured" is defined, in part, as anyone using a covered automobile with Apollo Flag's permission, except "[a]nyone other than [Apollo Flag's] employees, partners, ... or a lessee or borrower or any of [its] employees, *while moving property to or from a covered auto.*" (Emphasis added) (internal quotation marks omitted). Penn National conceded that its "while moving property to or from a covered auto" language carved out an exception for loading and unloading operations. Initially, Penn National contended that under the definition of an insured in its loading and unloading exclusion, Annin Flag was not covered because it was not an employee, lessee, or borrower of Apollo Flag's vehicle and, therefore, Annin Flag was not entitled to insurance coverage for Potenzone's claim. However, Penn National later conceded that its "while moving property" exception to the definition of insured was not enforceable due to New Jersey "law requiring coverage for so-called loading and unloading activities." *Potenzone, supra,* 388 *N.J.Super.* at 306, 908 *A.*2d 232 (internal quotation marks omitted).

In *Ryder, supra,* we stated that an "insurer would be required to provide coverage in a loading and unloading accident to the limits of its policy." 119 *N.J.* at 413, 575 *A.*2d 416 (internal quotation marks omitted). We find no justification to alter that statement. *Ryder* was decided more than sixteen years ago and the insurance industry has had ample time to adjust its premiums and policies to provide either step-down or full coverage for loading or unloading accidents.

Our courts have made it clear that a policy exclusion may not override statutory mandates to provide insurance coverage and the attempt to do so in a loading and unloading accident is void. *Ryder, supra,* 119 *N.J.* at 407, 575 *A.*2d 416; *Bellafronte, supra,* 151 *N.J.Super.* at 381–82, 376 *A.*2d 1294. In view of our long-established case law voiding loading or unloading exclusion clauses, we conclude that Penn National's insurance policy should be read as if that clause were not part of the policy. Absent the invalid loading and unloading clause, the remaining portions of the policy are applicable as written. Consequently, Penn National must provide coverage up to its full policy limit.

We recognize that one could fairly read our decision in *Proformance* to reach a different result in this matter. However, in *Proformance, supra,* we addressed for the first time whether, in light of the omnibus statute, an otherwise valid business exclusion should bar a third party from coverage under the policy. 185 *N.J.* at 410, 887 *A.*2d 146. We held that the business exclusion could not bar recovery that was required by statute. *Id.* at 420, 887 *A.*2d 146. It was the first time we invalidated a business exclusion of that nature. We followed the reasoning in *Marotta v. New Jersey Automobile Full Insurance Underwriting Ass'n,* 280 *N.J.Super.* 525, 532, 656 *A.*2d 20 (App.Div.1995), *aff'd,* 144 *N.J.* 325, 676 *A.*2d 1064 (1996) to conclude that "the statutorily required minimum limits of coverage" applied. *Proformance, supra,* 185 *N.J.* at 421, 887 *A.*2d 146.

We choose a different path here. Following our decision in *Ryder,* insureds, insurers, and self-insurers should have reasonably expected that the full policy limit for an accident during a loading or unloading operation was required. As stated earlier, the insurance industry has had ample time to adjust its rates and policy terms. *Ryder, supra,* 119 *N.J.* at 413, 575 *A.*2d 416 ("Under the terms of an ordinary liability policy, an insurer would be required to provide coverage in a loading and unloading accident to the limits of its policy—often an amount greater than the statutory minimum." (Internal quotation marks omitted)). If

the insurer intended to provide the statutory minimum coverage for loading or unloading accidents, it should have amended its policy to expressly provide for such step-down coverage. The failure to plainly provide for any step-down amounts results in the application of the full policy limits. We conclude that Penn National must provide coverage up to its policy limit of $500,000.

## IV.

We reverse the judgment of the Appellate Division and reinstate the judgment of the trial court.

*For reversal and reinstatement*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.