**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3802-21

PENNSYLVANIA NATIONAL
MUTUAL CASUALTY
INSURANCE COMPANY,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

ATLANTIC STATES
INSURANCE COMPANY and
DONEGAL MUTUAL
INSURANCE COMPANY,

    Defendants-Appellants/
    Cross-Respondents.

_____

Argued February 6, 2024 – Decided March 22, 2024

Before Judges Whipple, Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2071-19.

Ross G. Currie argued the cause for appellants/cross-respondents (Ward Law, LLC, attorneys; Ross G.

Currie, of counsel and on the briefs; Geoffrey Paul Huling, on the briefs).

Kevin E. Wolff argued the cause for respondent/cross-appellant (Kinney Lisovicz Reilly & Wolff PC, attorneys; Kevin E. Wolff, of counsel and on the briefs; Julia Talarick and Timothy P. Smith, on the briefs).

PER CURIAM

In these cross-appeals, we address the scope of New Jersey's "loading or unloading" doctrine with respect to the use of an insured vehicle, for the purpose of determining coverage for purported additional insureds under a liability insurance policy. We vacate and remand the July 15, 2022 judgment.

Appellants are Atlantic States Insurance Company (Atlantic States) and Donegal Mutual Insurance Company (Donegal), and respondent is Pennsylvania National Mutual Casualty Insurance Company (Penn National). This action arose when Penn National settled a personal injury action on behalf of its insureds, Altino Construction LLC (Altino) and Chemtura Corp. (Chemtura), in Nicholson v. Ceniviva Paving, Inc., et al., Case ID 170300703, Court of Common Pleas, Philadelphia County, Pennsylvania. The injured plaintiff, Steven Nicholson, had also filed a prior lawsuit, Nicholson v. Ceniviva Paving, Inc. et al., Case ID 160204983 (the Initial Lawsuit), which had not named Altino and Chemtura as defendants. In his second lawsuit,

Nicholson included all parties who had been named in the first—including Ceniviva—and added Altino and Chemtura as defendants. The lawsuits were later consolidated under Case ID 170300703.

Nicholson's lawsuits arose from injuries he suffered while working for Atlantic States's insured, George Ceniviva d/b/a Precision Paving & Concrete (Ceniviva). Chemtura had engaged Altino for paving work at its facility in Fords, New Jersey, and Altino subcontracted that work to Ceniviva. Nicholson was injured at Chemtura when he was loading a paver up a ramp and onto a flatbed trailer after Ceniviva's paving work was completed; both the paver and the trailer were owned by Ceniviva. While Nicholson was loading the paver onto the trailer, the paver lurched forward, causing Nicholson to fall backwards from the operator's station; the paver then rolled over Nicholson's leg, causing severe personal injury.

Before the accident, Atlantic States issued a commercial automobile insurance policy (the Auto Policy) and a commercial package (general liability) insurance policy (the Package Policy) to Ceniviva. Donegal issued a commercial umbrella liability insurance policy (the Umbrella Policy) to Ceniviva (together, the Ceniviva Policies).

A-3802-21

Penn National issued a commercial umbrella policy, commercial general liability policy, and business automobile policy to Altino and—for the purposes of Nicholson's action—accepted Chemtura as an additional insured under the commercial general liability policy and the commercial umbrella policy.

On June 2, 2016, Ceniviva notified Atlantic States of the Initial Lawsuit. On July 1, 2016, Atlantic States denied coverage to Ceniviva under the Package Policy and the Umbrella Policy. Ceniviva did not contest the denial of coverage, and those denials are not the subject of this appeal.

On June 2, 2017, the Court of Common Pleas consolidated Nicholson's two lawsuits, anticipating the case would be trial ready by June 2018. It ultimately scheduled the trial to begin on October 5, 2018.

In February 2018, Altino and Chemtura filed motions for summary judgment, which were denied. Less than two weeks before trial, on September 25, 2018, Penn National gave notice to Atlantic States and Donegal, seeking coverage of Altino and Chemtura as additional insureds under the Package and Umbrella Policies. Before Penn National's September 2018 notice, none of the underlying defendant parties—Ceniviva, Altino, or Chemtura—had given notice to Atlantic States or Donegal of the later Nicholson action. Neither

4

Altino nor Chemtura made claims for coverage as putative additional insureds under the Ceniviva Policies.

By correspondence dated October 1, 2018, Penn National advised Atlantic States settlement discussions were underway and reiterated its demand for coverage on behalf of Altino and Chemtura under the Ceniviva Package Policy. On October 9, 2018, Penn National advised it had settled on behalf of Altino and Chemtura for $4 million and demanded reimbursement of $1 million under the Ceniviva Package Policy. Atlantic States issued a denial of coverage to Altino and Chemtura and denied Penn National's demand for indemnification of $1 million of the settlement under all the Ceniviva Policies issued by Atlantic States and Donegal.

Penn National sued for coverage. The parties stipulated—as an insurance coverage matter where no facts were in dispute and the issues to be resolved involved solely questions of law—the case would be decided on renewed cross-motions for summary judgment with joint exhibits and a joint statement of undisputed material facts. The court entered an order to that effect on March 22, 2022, and the parties submitted their cross-motions for final disposition on June 8 and 9, 2022. Oral arguments were heard, and the trial judge issued an oral decision and a corresponding order June 30, 2022,

finding generally in Penn National's favor, but denying its application for attorneys' fees and costs. The trial judge entered final judgment on July 15, 2022, setting out the amounts Atlantic States and Donegal owed to Penn National.

These appeals[1] and cross-appeals followed.

---

[1] Atlantic States's notice of appeal does not include the June 30, 2022 order granting Penn National's summary judgment and denying Atlantic States's summary judgment. The issues from that order Atlantic States raised were not addressed in the July 15, 2022 final judgment from which they do appeal. Generally, "earlier orders . . . not included in [appellants'] notice of appeal . . . are not within the scope of [the] appeal." 30 River Ct. E. Urb. Renewal Co. v. Capograsso, 383 N.J. Super. 470, 473-74 (App. Div. 2006). "The appellant should explicitly designate all judgments, orders[,] and issues on appeal in order to assure preservation of their rights on appeal." Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 461 n.1 (App. Div. 2002) (citing R. 2:5-1(f)). "One of the obvious purposes of the notice of appeal is to put the court and opposing parties on reasonable notice of the issues and lower court or agency rulings on appeal." Pressler & Verniero, Current N.J. Court Rules, cmt. 5.1 on R. 2:5-1, at 495 (2024).

We may, however, choose to "indulge[]" parties that neglect to identify challenged orders in a notice of appeal, when they have provided sufficient information in the record to permit review. See Kornbleuth v. Westover, 241 N.J. 289, 297-99 (2020) ("Although plaintiffs' notice of appeal identified only the order denying their motion for reconsideration, the Appellate Division generously 'address[ed] the two issues for which plaintiffs have provided the complete transcripts' . . . . We[, the New Jersey Supreme Court,] do the same.").

Here, Atlantic States fully briefed the issues, provided copious evidence in the record, and included the transcript of the hearing at which the issues raised on appeal were addressed by the trial court. Penn National was clearly "on reasonable notice of the issues and . . . rulings on appeal," see Pressler & Verniero, cmt. 5.1 on R. 2:5-1, as they answered appellants' substantive

6                                                                    A-3802-21

We review a motion for summary judgment de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted if "there is no genuine issue as to any material fact . . . [and] the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). "When no issue of fact exists, and only a question of law remains, [we] afford[] no special deference to the legal determinations of the trial court." Ibid. (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The trial judge's decision to grant or deny the award of attorneys' fees and costs is generally reviewed under an abuse of discretion standard, but when that decision is based on a mistaken interpretation of law, it is reviewed de novo. Myron Corp. v. Atl. Mut. Ins. Corp., 407 N.J. Super. 302, 309 (App. Div. 2009).

On appeal, Atlantic States argues Altino and Chemtura were not users of the insured vehicle in a way that would make them additional insureds under the Ceniviva Policies, because neither Altino nor Chemtura was engaged in

arguments and listed the relevant order granting them summary judgment in their own notice of cross-appeal. We, therefore, have sufficient information available in the record here to indulge the parties and address the merits of appellants' arguments.

loading the paver onto the Ceniviva vehicle at the time of Nicholson's injury. Atlantic States asserts the trial court erred by holding Chemtura and Altino were users of the trailer based on Nicholson's allegation that they failed to provide proper training on the safe use and loading of the paver. Atlantic States argues there is nothing in the record to suggest Chemtura and Altino were involved in any way with the loading of the paver onto the trailer. We agree.

The New Jersey Legislature mandated that all automobile owners shall maintain "automobile liability insurance coverage," "insuring against loss . . . arising out of the ownership, maintenance, operation[,] or use of an automobile." N.J.S.A. 39:6A-3 (emphasis added). It is well settled that, under this omnibus liability coverage mandate, the "use of an automobile" includes the acts of loading and unloading that automobile. See, e.g., Kennedy v. Jefferson Smurfit Co. & Container Corp. of Am., 147 N.J. 394, 398 (1997). New Jersey courts have also "long recognized 'that the obligation to provide coverage in a loading and unloading accident arises from statute and therefore cannot be limited by contract.'" Potenzone v. Annin Flag Co., 191 N.J. 147, 152-53 (2007) (quoting Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp.,

119 N.J. 402, 407 (1990), which cites generally <u>Bellafronte v. Gen. Motors Corp.</u>, 151 N.J. Super. 377 (App. Div. 1977)).

In analyzing whether a party is additionally insured under the loading and unloading doctrine, New Jersey courts look to the "complete operation" of loading and unloading, where "all that is required to establish coverage is that the act or omission which resulted in the injury was necessary to carry out the loading or unloading." <u>Kennedy</u>, 147 N.J. at 399 (quoting <u>Drew Chem. Corp. v. Am. Fore Loyalty Grp.</u>, 90 N.J. Super. 582, 589 (App. Div. 1966)). In such an analysis, "the critical issue is whether" defendants' alleged acts or omissions were "an integral part of the loading activity, and thus covered under the 'use' provision." <u>Id.</u> at 401. Indeed,

> [t]he pertinent inquiry is whether the acts of negligence charged to defendants were a part of the overall loading or unloading operation so that, <u>in the commission of the negligent acts charged, defendants can be said to have been using the vehicle</u> and thereby became additional insureds under the policy. In other words, did the negligent act which caused the injury or is alleged to have caused it constitute a part of the loading and unloading process?
>
> [<u>Id.</u> at 400 (emphasis added) (quoting <u>Cenno v. W. Va. Paper & Pulp Co.</u>, 109 N.J. Super. 41, 45 (App. Div. 1970)).]

9

In Cenno, we determined the company responsible for fastening metal bands around a bale of cardboard before it was picked up for shipping was not an additional insured under the comprehensive automobile liability policy on the truck used for shipping, even though the metal bands broke and injured the driver as he unloaded the bale from his truck. 109 N.J. Super. at 43-45. The defendant company negligently banded the bale, but—even though the accident and injury occurred during the act of unloading the truck—the negligent act could not "reasonably be said to be causally connected with the loading or unloading in any way." Id. at 45-47. We concluded,

> unless the alleged negligent act which is alleged to have caused the accident was an integral part of the overall loading or unloading operation, so that the mishap is causally connected with such loading and unloading and did not merely occur during it, the person charged with the negligent act is not considered to have been using the vehicle so as to be covered by the vehicle's liability policy for such act as an additional [insured].
>
> [Id. at 47.]

Clarifying the reasoning behind Cenno in light of its own decision in Kennedy, the Supreme Court emphasized it was "unclear whether the cardboard was baled with metal bands solely to facilitate its shipment or whether that was a requirement of [the defendant company's] customer." 147

10

N.J. at 405. The Court asserted "[i]f there had been a factual basis for concluding that the baling was <u>done solely to enable shipment of the goods</u>, the <u>Cenno</u> court would have found [the defendant company] to be an additional insured." <u>Ibid.</u> (emphasis added). Thus, in dicta, the <u>Kennedy</u> Court described what may be the determinative factor in this case: if the alleged act or failure to act was "done solely to enable the shipment of the goods," the third party would be an additional insured under the "loading or unloading" doctrine. <u>See ibid.</u>

In contrast, the premises-liability line of cases denies indemnification of would-be additional insureds "for accidents occurring during loading and unloading activities because the accident arose not from the loading or unloading activities, but from the negligent acts of the owner of the premises where the accident occurred, prior to the loading or unloading of the vehicle." <u>Id.</u> at 401-02. For example, in <u>Greentree Assocs. v. U.S. Fid. & Guar. Co.</u>, after a bulldozer slid down a slope of loose soil and pinned a worker to a truck while he was engaged in unloading the truck, we found that the owner of the slope's "alleged failure to properly maintain, control, and supervise the construction site or to provide a safe workplace did not constitute any part of the loading and unloading process." 256 N.J. Super. 382, 386 (App. Div.

11

1992).  In <u>Craggan v. IKEA USA</u>, the defendant was not indemnified by the plaintiff's auto insurer when the plaintiff was injured during the loading process by tripping on a tangle of string present in the loading area controlled by the defendant.  332 N.J. Super. 53, 68-69 (App. Div. 2000).  There, we found "the loading/unloading process is not implicated at all with regard to plaintiff's accident and injuries because the hazardous condition created by the string was not 'within reason a condition necessary to the act of loading[,] nor had it any reasonable connection to that work.'"  <u>Id.</u> at 69 (quoting <u>Wakefern Food Corp. v. Gen. Accident Grp.</u>, 188 N.J. Super. 77, 84 (App. Div. 1983)).

Thus, courts rely on the facts of the underlying incident—here stipulated in the joint statement of material facts—in determining coverage for various "loading or unloading" activities.  By contrast, the injured plaintiff's allegations in the underlying liability litigation should only be used to frame the allegedly negligent act or omission that will be used in the loading and unloading analysis.  Here, the only significance Nicholson's allegations hold is in articulating the specific "alleged negligent act which is alleged to have caused the accident."  <u>See</u> <u>Cenno</u>, 109 N.J. Super. at 45.  Once the alleged negligent act is identified, the court should then use the facts of the underlying

A-3802-21

incident to determine whether the alleged act or omission is "an integral part of the overall loading or unloading operation." See ibid.

Here, the trial judge relied partially on Nicholson's allegations and partially on deposition testimony to impute a duty to Chemtura and Altino to ensure "that there was adequate training for Nicholson [in] using the paver." The trial judge also found Chemtura and Altino had failed to ensure proper training and failed to provide oversight. The judge then used the breach of that duty to distinguish the present case from "the line of cases where coverage was denied due to a result of a negligent upkeep or for defects on the premises." The judge also emphasized the paver "was an essential function to the project that Chemtura had contracted to Altino, which was in turn contracted to Ceniviva."

This is not an appropriate loading and unloading analysis, however. First and foremost, though much emphasis is placed on the use of the paver, it is the trailer that is the insured vehicle in this instance. The analysis should look at "whether the acts of negligence charged to defendants were a part of the overall loading or unloading operation [of the trailer] so that, in the commission of the negligent acts charged, defendants can be said to have been using the [insured] vehicle." Kennedy, 147 N.J. at 400. We distinguish

between negligent acts that are "causally connected with such loading and unloading" and those leading to accidents that "merely occur during" loading or unloading of the insured vehicle. <u>Cenno</u>, 109 N.J. Super. at 47.

Thus, although the proper training of the paver operator certainly affects the safety with which the loading process can be undertaken, it is not "necessary to the act of loading" <u>the trailer</u> and instead creates a general "hazardous condition" in the workplace. Chemtura's and Altino's purported failures to ensure proper training and provide oversight cannot reasonably be said to be causally connected to the use of the trailer. The argument is tenuous even to tie these supposed duties to the use of the paver, but the covered auto here is the trailer onto which the paver was being loaded.[2]

---

[2] In <u>Kennedy</u>, the Supreme Court suggested in dicta a third party would be an additional insured under the "loading or unloading doctrine" if the alleged act or failure to act was "done solely to enable the shipment of the goods." 147 N.J. at 405. We do not adopt that stance here.

Instead, if Chemtura and Altino have failed to ensure proper training and to safely oversee the onsite work, this failure is more analogous to the failure to maintain safe workplace seen in the "premises liability" line of "loading or unloading" cases. <u>See</u> <u>Kennedy</u>, 147 N.J. at 401-02 ("The premises-liability cases deny coverage . . . for accidents occurring during loading and unloading activities because the accident arose not from the loading or unloading activities, but from the negligent acts of the owner of the premises where the accident occurred, prior to the loading or unloading.").

A-3802-21

Having reached this conclusion, we do not reach the parties' remaining arguments.

Vacated and remanded for the entry of judgment in favor of appellants. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION