923 A.2d 307 (2007)
393 N.J. Super. 327
Theresa SEABRIDGE, Plaintiff-Appellant,
v.
DISCOUNT AUTO, INC., Sean F. Petry,[1] and Nicholas A. Rossos, Defendants, and
High Point Insurance Company, Defendant-Respondent.
Mildred Sessa, Plaintiff-Appellant,
v.
Discount Auto, Inc., Sean F. Petry, and Nicholas A. Rossos, Defendants, and
High Point Insurance Company, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 2007.
Decided June 4, 2007.
Martin Pappaterra, Princeton, argued the cause for appellants (Stark & Stark, attorneys for appellant Theresa Seabridge; Pellettieri, Rabstein & Altman, attorneys for appellant Mildred Sessa; Bruce H. Stern and Mr. Pappaterra, of counsel and on the joint brief; Carlia M. Brady, on the joint brief).
Daniel J. Pomeroy, Springfield, argued the cause for respondent (Mortenson and Pomeroy, attorneys; Mr. Pomeroy and Karen E. Heller, on the brief).
Before Judges CUFF, WINKELSTEIN and FUENTES.
*308 The opinion of the court was delivered by
CUFF, P.J.A.D.
In these consolidated insurance coverage appeals, we encounter the "step-down" clause in a different context than recent cases. Here, rather than a policy provision that provides two levels of coverage, as in certain underinsured and uninsured motorist situations, we address a provision that provides minimum coverage in place of a former exclusion. We hold that an amendment to a personal automobile policy that provided for a step down of coverage rather than an exclusion of coverage when the covered automobile was driven by a person in the automobile repair business is valid and enforceable. Therefore, we affirm the order granting summary judgment in favor of defendant High Point Insurance Company (High Point).[2]
On June 23, 2003, plaintiffs Theresa Seabridge and Mildred Sessa were involved in an automobile accident with an automobile owned by defendant Nicholas A. Rossos *309 and operated by defendant Sean F. Petry, an employee of defendant Discount Auto, Inc. (Discount). Rossos's vehicle was in the possession of Discount for service at the time of the accident. On that date, Rossos was insured under a personal automobile policy issued by defendant High Point.
The policy in effect at the time of the accident provided coverage of $100,000 per person and $300,000 per accident. The policy also contained the following provision for persons who drove an insured's automobile while engaging in the automobile business:
OUR OBLIGATIONS (PART 2)
Liability
We will pay, on behalf of persons insured under this part, all sums they become legally obligated to pay as damages because of an automobile accident which results in bodily injury to someone else, or which results in property damage to someone else, except as shown under Losses We Will Not Pay For (Part 2). These payments will be subject to the amount of coverage shown on the Declarations.
The High Point policy specifically addressed losses that it would not pay and losses that it would pay at a level less than the policy limits. As to "automobile business" use, the policy provided: "We will not pay more than a coverage limit of $15,000 per person, $30,000 per accident for injury or damage caused by any person while such person is employed or otherwise engaged in any automobile business." The policy defined "automobile business" as "the occupation or business of selling, repairing, servicing, storing, parking or transporting vehicles or motor vehicles." The policyholder had no notice of this change.
Prior to January 2003, the policy excluded coverage for losses that occurred for injury or damage caused by any person engaged in the automobile business. Thus, under the policies issued to Rossos prior to January 2003, the High Point policy would have provided no coverage for the damage and injury caused by Discount's employee to plaintiffs.
In response to cross-motions for summary judgment, Judge Jacobson determined that a reasonable insured would have considered the amendment to the Rossos policy an increase in coverage and would not necessarily have expected specific notice of the change. Moreover, the amendment was not obscured by "an undifferentiated passel of 200 documents." Thus, she distinguished Skeete v. Dorvius, 184 N.J. 5, 875 A.2d 859 (2005), and denied plaintiffs' motions for summary judgment and granted High Point's motion for summary judgment.
"Step-down" clauses have received considerable judicial attention over the last several years. A step-down clause in an insurance policy provides different levels of coverage to different insureds based on their status or the existence of other insurance. Pinto v. N.J. Mfrs. Ins. Co., 183 N.J. 405, 412, 874 A.2d 520 (2005). We commonly confront step-down provisions in uninsured and underinsured motorist (UM/UIM) coverage provisions of automobile insurance policies. See, e.g., Pinto, supra, 183 N.J. at 405, 874 A.2d 520; Murawski v. CNA Ins. Co., 183 N.J. 423, 874 A.2d 530 (2005); French v. N.J. Sch. Bd. Ass'n Ins. Group, 149 N.J. 478, 694 A.2d 1008 (1997). As long as the intent is clear to treat some family members or employees differently than others, public policy does not preclude the inclusion of step-down provisions in an automobile liability policy. French, supra, 149 N.J. at 493, 694 A.2d 1008.
*310 Here, the step-down provision for those engaged in the automobile business was inserted in place of an exclusion. The issue of exclusions based on the business in which an operator of a motor vehicle is engaged at the time of an accident has also received recent attention by the Supreme Court. In Proformance Insurance Co. v. Jones, 185 N.J. 406, 887 A.2d 146 (2005), the Court addressed a business pursuit exclusion. There, the driver of a pickup truck was involved in a motor vehicle accident. Id. at 409, 887 A.2d 146. The owner of the truck loaned it to a relative but instructed the relative not to use the truck in the relative's moving business or to allow anyone else to use it. Ibid. The relative ignored both instructions. Ibid. The relative allowed an employee to use the truck to deliver furniture, and the employee fell asleep, struck a parked car, and injured his passenger and a pedestrian. Ibid.
The Proformance Insurance Co., as the truck owner's insurer, filed an action seeking a declaratory judgment that it owed no obligation to defend or indemnify the owner of the truck, her relative, or his employee because the relative and his employee exceeded the owner's initial permission to operate the truck and because use of the truck in the relative's moving business was an excluded business pursuit. Id. at 410, 887 A.2d 146.
The Court held that at the time of the accident this State "required every owner of a registered [motor] vehicle to maintain liability insurance." Id. at 411, 887 A.2d 146. The statute, N.J.S.A. 39:6B-1(a), referred to as the omnibus statute, mandated minimum coverage of $15,000 per person and $30,000 per accident. Ibid. The Court reasoned that the public policy of the State expressed in the omnibus liability coverage statute was undermined by the business pursuit exclusion. Id. at 416-17, 887 A.2d 146. Such an exclusion deprives some innocent persons of even minimal financial protection in the event of their involvement in an accident. Id. at 414-15, 887 A.2d 146. A policy provision contrary to public policy cannot be enforced. Id. at 415, 887 A.2d 146. Thus, the Court held that "the legislative policy embodied in our statutes of compensating injured third parties by requiring all New Jersey motorists to carry compulsory insurance overrides the business exclusion in the Proformance policy." Id. at 420, 887 A.2d 146. Having found the business pursuit exclusion unenforceable, the Court reformed the policy to provide the minimum mandated coverage required by the omnibus statute. Id. at 420-21, 887 A.2d 146.
A similar result occurred in Potenzone v. Annin Flag Co., 388 N.J.Super. 303, 304, 908 A.2d 232 (App.Div.), certif. granted, 188 N.J. 493, 909 A.2d 727 (2006), which involved a "loading and unloading" exclusion. Finding no logical distinction between a loading and unloading exclusion and the business pursuit exclusion in Proformance, we held that the loading and unloading exclusion was invalid because it was contrary to public policy. Id. at 310, 908 A.2d 232. As in Proformance, we reformed the policy to provide the minimum coverage mandated by statute. Id. at 309-10, 908 A.2d 232.
Plaintiffs, relying on Skeete, urge that the step-down provision found in the Rossos High Point policy should not be effective as to them because Rossos was not provided specific notice of the policy amendment. We hold that Skeete is distinguishable and does not dictate a better result for plaintiffs than the injured parties in Proformance and Potenzone.
In Skeete, supra, the policy from which the plaintiff sought underinsured motorist benefits had recently been amended to *311 include a step-down provision. 184 N.J. at 6-7, 875 A.2d 859. When originally issued, a person in the plaintiff's position would have $100,000 of UM/UIM coverage. Id. at 7, 875 A.2d 859. Two years later, the insurance carrier amended the UM/UIM coverage to include a step-down provision that reduced coverage for additional insureds from $100,000 to $15,000. Id. at 7, 875 A.2d 859.
The policyholder in Skeete received notice of the changes in the form of two packages of documents. Ibid. The first package contained an eighty-three page document; the second, a thirty page document. Ibid. In addition, a cover letter directed the insured to read the policy and to note changes in the policy. Ibid. Another three page document outlined the various changes. Ibid. Significantly, the step-down provision in the UM/UIM coverage was not noted. Ibid. In the context of this passel of documentation without any notice of the reduced UM/UIM coverage, the Court held that the UM/UIM step-down provision was ineffective. Id. at 8-9, 875 A.2d 859.
That is not this case. First, the coverage provided to Rossos through the latest amendment actually increased his coverage. If he had examined and understood his prior policy, he would have believed that there would be no coverage available under the circumstances of this case.
Second, the lack of specific notice of the amendment should not defeat an alteration that conformed the High Point policy to the express public policy of this State. Furthermore, plaintiffs should not be able to seize on the lack of specific notice of the amendment to the policyholder to receive more coverage than they would have received if the insurer had retained the exclusion despite stated public policy.
We, therefore, affirm the November 29, 2005 order granting defendant High Point's motion for summary judgment.
Affirmed.
NOTES
[1] Mistakenly denominated as Shawn F. Petry in this case.
[2] High Point is the successor of Prudential Commercial Insurance Company of New Jersey, Inc., the insurance carrier that had issued the policy.