**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0842-20

ARTHUR J. BROWN, NANCY G.
LOVERING, Administratrix of the
Estate of WILLIAM LOVERING,
deceased, and as Administratrix Ad
Prosequendum for the Heirs at Law
of WILLIAM LOVERING, and
LINDA ROLICK, Administratrix
of the Estate of JOHN ROLICK,
deceased, and as Administratrix Ad
Prosequendum for the Heirs at Law
of JOHN ROLICK,

     Plaintiffs-Appellants,

v.

NEW JERSEY
MANUFACTURERS INSURANCE
COMPANY and GOVERNMENT
EMPLOYEES INSURANCE
COMPANY,

     Defendants-Respondents,

and

RIDER INSURANCE,

     Defendant.

_____

Argued February 14, 2022 – Decided March 8, 2022

Before Judges Mayer and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2156-18.

Jerry Friedman argued the cause for appellants.

Daniel J. Pomeroy argued the cause for respondent New Jersey Manufacturers Insurance Company (Pomeroy, Heller, Ley, DiGasbarro & Noonan, LLC, attorneys; Daniel J. Pomeroy and Karen E. Heller, on the brief).

Darren C. Kayal argued the cause for respondent GEICO Indemnity Company (Rudolph & Kayal, PA, attorneys; Darren C. Kayal, on the brief).

PER CURIAM

This appeal arises from three separate accidents. The accidents involving plaintiffs William Lovering and John Rolick resulted in their death. The claims on behalf of Lovering and Rolick were filed by the administrators of their estates. The third accident involved plaintiff Arthur J. Brown, who survived his injuries.

Lovering is the only plaintiff with claims against defendant Government Employees Insurance Company a/k/a GEICO Indemnity Company (GEICO). Lovering appeals from a July 15, 2019 order partially dismissing his claims

against GEICO. Lovering also appeals from an August 30, 2019 reconsideration order dismissing his claims against GEICO in their entirety.

All three plaintiffs, Lovering, Rolick, and Brown, have claims against defendant New Jersey Manufacturers Insurance Company (NJM). Lovering, Rolick, and Brown appeal from October 14, 2020 orders granting summary judgment in favor of NJM and denying their motion for summary judgment. We affirm all orders on appeal.

Plaintiffs were involved in accidents while riding their motorcycles. Each plaintiff procured insurance for his motorcycle. Each plaintiff obtained a separate insurance policy for his personal automobiles. Plaintiffs sought to recover underinsured motorist benefits (UIM) or uninsured motorist benefits (UM) under their automobile insurance policies for injuries suffered in the motorcycle accidents despite exclusions contained in their automobile insurance policies.

We provide a summary of the facts and policy language relevant to the claims asserted by Brown, Lovering, and Rolick.

A-0842-20

Brown

On June 20, 2016, Brown suffered injuries after colliding with a phantom vehicle while riding his motorcycle. Brown sought UM coverage for his injuries under his NJM automobile policy.

Brown's obtained separate motorcycle insurance coverage through Rider Insurance (Rider). Under Rider's motorcycle policy, Brown elected UM/UIM limits in the amount of $15,000 for each person and $30,000 for each accident.

Brown's NJM automobile policy contained a UM/UIM endorsement, allowing recovery for personal injuries from operators of uninsured and underinsured motor vehicles in the amount of $300,000. However, his NJM policy contained an exclusion at Paragraph A.7 (A.7 exclusion) regarding UM/UIM coverage.

NJM denied UM benefits to Brown citing the exclusion. The A.7 exclusion contained the following limitation on UM/UIM coverage:

> A. We do not provide coverage under this endorsement for property damages or bodily injury sustained by any insured:
>
> . . . .
>
> 7. While occupying any vehicle insured by another motor vehicle policy in which you or a family member are a named insured.

4

However, this exclusion ("A.7") does not affect UM/UIM coverage for minimum limits required by New Jersey law for liability coverage as set forth in N.J.S.A. 39:6A-3.

In a July 20, 2011 cover letter, NJM provided Brown with a two-page document entitled "Summary of Important Changes to Your New Jersey Personal Auto Policy" (Summary). The Summary expressly identified changes pertaining to UM/UIM coverage. Each renewal of Brown's NJM policy after 2011 contained the A.7 exclusion.

Lovering

On November 10, 2013, while riding his motorcycle, Lovering suffered injuries resulting from an accident involving another motorist, Anthony Davoulas. Lovering died from his injuries. Davoulas had an automobile insurance policy from USAA General Indemnity Company (USAA) with a $15,000 per person coverage limit. USAA paid $15,000 to Lovering's estate in settlement of the claims against Davoulas.

Lovering obtained separate motorcycle insurance coverage from Foremost Insurance Company (Foremost). Under the Foremost motorcycle policy, Lovering elected UM/UIM limits of $15,000 per person and $30,000 per accident.

A-0842-20

On the date of the motorcycle accident, Lovering also had a personal automobile insurance policy with GEICO. His GEICO automobile policy had a UIM limit of $100,000 per person. GEICO denied UIM benefits to Lovering under Section IV, Exclusion 5 (Exclusion 5) of its policy. Exclusion 5 stated:

Section IV does not apply:

> 5. To bodily injury sustained by an insured while occupying a motor vehicle owned by an insured and not described in the Declarations and not covered by the Bodily Injury and Property Damage liability coverages of this policy.

Lovering also sought UIM coverage under an NJM automobile policy issued to his daughter, Rachel Prendeville. Prendeville was a resident member of Lovering's household on the date of his accident. Prendeville's NJM automobile policy contained a UM/UIM endorsement limiting recovery for personal injuries to $100,000 per person. Her NJM policy also contained the A.7 exclusion as well as a provision reducing UM/UIM limits for any UIM claim on behalf of a "family member" of the named insured who was the named insured on his or her own policy. NJM denied UIM benefits to Lovering relying on these exclusions.

6

A-0842-20

Rolick

On April 12, 2017, Rolick, while riding his motorcycle, collided with a car driven by Christian Merrill. Rolick died from injuries suffered in that accident. Merrill had an automobile insurance policy issued by GEICO with a $15,000 coverage limit. GEICO paid $15,000 to Rolick's estate in settlement of the claims against Merrill.

Rolick had separate motorcycle insurance coverage from GEICO. Under the GEICO motorcycle policy, Rolick elected a UM/UIM limit of $15,000 per person and $30,000 per accident.

Rolick had a personal automobile insurance policy with NJM and sought UIM coverage under that policy. Rolick's NJM policy had a UM/UIM limit of $100,000 per accident. Rolick's policy contained the A.7 exclusion. However, because Rolick renewed his NJM policy in 2017, the A.7 exclusion in his policy differed slightly from the A.7 language in the Brown and Prendeville NJM policies. In 2017, Rolick's NJM policy stated the A.7 exclusion did "not affect the UM/UIM coverage up to the following coverage limits: $15,000 per person/$30,000 per accident for bodily injury claims, and $5,000 for property damage claims." NJM denied Rolick's claim for UIM benefits under the A.7 exclusion.

A-0842-20

In a March 3, 2011 cover letter, NJM provided the Summary to Rolick, noting the limitation in UM/UIM coverage consistent with the statutory minimums under N.J.S.A. 39:6A-3.  While the specific dollar limits in the A.7 exclusion first appeared in 2017 renewal of Rolick's NJM automobile policy, he did not receive a cover letter or Summary from NJM in 2017 regarding changes to the policy.

NJM and GEICO denied plaintiffs' requests for UM/UIM coverage based on the exclusions contained in their respective automobile policies.  NJM denied coverage because plaintiffs occupied a vehicle insured under a different policy on the dates of the motorcycle accidents.  GEICO denied coverage because its insured, Lovering, occupied a motorcycle own by him but not described on the declaration page of his GEICO automobile policy.

After being denied coverage by NJM and GEICO, plaintiffs filed a complaint demanding UM/UIM coverage under their personal automobile policies for damages resulting from the motorcycle accidents.

In lieu of filing an answer, GEICO filed a motion to dismiss Lovering's claims.  In a July 15, 2019 order, the motion judge partially granted GEICO's motion. Relying on Katchen v. Government Emplyees Insurance Company, 457 N.J. Super. 600 (App. Div. 2019), dismissed on appeal, 241 N.J. 354 (2020), the

judge dismissed Lovering's UIM claims against GEICO, finding Exclusion 5 enforceable because the exclusion was lawful and unambiguous.

However, the judge denied GEICO's request to dismiss Lovering's claims in their entirety based on his argument GEICO failed to provide adequate notice of a change in the policy's provisions. Because GEICO did not submit papers in response to Lovering's argument on that issue, the judge concluded there were unresolved fact issues and denied that part of GEICO's dismissal motion.

GEICO moved for reconsideration. In an August 30, 2019 order, the judge reconsidered her prior decision and dismissed Lovering's remaining claims against GEICO.

On reconsideration, Lovering conceded there were no material disputed facts precluding the judge's review of the issue as a matter of law. However, Lovering requested the judge grant the motion "without prejudice, to permit the case to be revived if there should be a change in the law, specifically as to Katchen v. [Gov't Emps. Ins. Co.], 457 N.J. Super. 600 (App. Div. 2019) due to the present[] grant of certification by the New Jersey Supreme Court in that matter."[1] The judge declined Lovering's request, finding no "legal authority

_____

[1] On March 10, 2020, well after the motion judge granted GEICO's dismissal motion, the New Jersey Supreme Court dismissed the Katchen appeal with prejudice. See 241 N.J. 354 (2020).

that would permit a motion for summary judgment to be granted without prejudice . . . ."

Following the exchange of discovery, plaintiffs filed a motion for summary judgment against NJM. NJM opposed the motion and filed a cross-motion for summary judgment. On June 5, 2020, the judge heard counsel's arguments and reserved decision.

In an October 14, 2020 order and attached twenty-five-page written statement of reasons, the motion judge denied plaintiffs' motion and granted NJM's cross-motion. The judge concluded there were no disputed facts precluding consideration of the summary judgment motions.

The judge determined "exclusion A.7 as contained in the 2011 policy amendment [was] clear and unambiguous." While the judge noted,

> NJM could have in 2011 drafted the policy to specifically state that, or define, the minimum legal policy limits as $15,000/$30,000 as they did in the 2017 change – the court cannot say that as a matter of law they were required to, or that the policy language used in 2011, which did not contain the specific minimum policy limit amounts, was unclear or ambiguous.

In rejected plaintiffs' arguments, the judge held "the word 'minimum' did not need to be defined in the policy by providing the specific policy limits; the purchaser is clearly warned that the policy excludes coverage, aside from

providing the minimum in UM/UIM coverage allowed by law."  Because the judge found the language of the A.7 exclusion was clear and unambiguous, she enforced the exclusion and held Lovering and Rolick were "not entitled to [UIM] coverage under the terms of this exclusion."  As to Brown's UM claim, the judge held he was "entitled to coverage in the minimum amount required by law, which is $15,000" and NJM "share[d] responsibility, on a pro rata basis, with the other existing $15,000/$30,000 UIM policy."

The judge also rejected plaintiffs' claim that NJM failed to provide adequate notice of the 2011 policy change incorporating the A.7 exclusion.  The judge held Brown and Rolick[2] received "the notice of important changes packet, [which] included a two-page document entitled 'Summary of Important Changes' . . . ."  She noted the exclusions in the Summary were highlighted by use of a slightly larger and bold font.  Additionally, the judge found the NJM renewal policies issued to Brown and Rolick were sent with a cover letter, stating:

> Inside this packet is your renewal policy which includes your ID cards, Declarations page, coverage information and bill.  Also enclosed is a <u>Summary of Important Changes</u>, which outlines several new or revised policy provisions being introduced with this renewal.  Please read it carefully.

---

[2] Because the NJM policy relied upon by Lovering was issued to his daughter, the judge found "no argument as to insufficient notice as to plaintiff Lovering."

The judge noted the Summary received by Brown and Rolick stated the following regarding UM/UIM coverage:

CLARIFICATIONS OF COVERAGE

. . . .

> 2. We have clarified that the exclusions for recovery of damages such as pain and suffering or inconvenience resulting from a loss with an uninsured motor vehicle, unless the injured party has a legal right to such recovery under the No-Fault Law, also applies to an underinsured motor vehicle.

RESTRICTIONS OF COVERAGE

> 1. We have added an exclusion which limits coverage to the minimum liability limits required by New Jersey Law for you or a family member while occupying any vehicle insured under another motor vehicle policy in which either you or the family member is a named insured.

The judge determined NJM's Summary "was issued in a manner designed to fit the language of Skeete [v. Dorvius, 368 N.J. Super. 311 (App. Div. 2004), aff'd, 184 N.J. 5 (2005)] mandating that the insurer not simply bury changes in a lengthy insurance policy, but rather advise the insured by way of a separate, not-too-lengthy notice of policy changes." The judge concluded NJM's failure to state the actual dollar limits in Summary "did not render the policy provision unclear and ambiguous" and found no legal basis to support plaintiffs' claim the

12

Summary "had to use the specific dollar amounts rather than the 'minimum liability limits' language." She held neither "the manner in which the policy holder was informed of the change, or the content of the notice of change, was unclear or ambiguous."

Regarding the change in the 2017 policy language, the issue applied to Rolick only because the accidents involving Brown and Lovering predated NJM's inclusion of the dollar limits in the A.7 exclusion. The judge determined a policyholder upon renewal of an NJM policy in 2017 would not receive notice of a change because the insured would find the change by reading the actual policy language. The judge concluded NJM's 2017 change to the A.7 exclusion "was not a new restriction or reduction in coverage. Insertion by NJM of the dollar figures for the minimum policy limits did not restrict or reduce coverage available to the insured from that which was available under the 2011 amendment." Thus, she found "no notice of the change in policy language, either in the declaration page, a Summary of Important Changes, or otherwise, was required."

On appeal, plaintiffs raise two main arguments in support of their contention the judge erred in denying their motion for summary judgment. Plaintiffs argue the UM/UIM provisions in the NJM and GEICO policies were

A-0842-20

unlawful and ambiguous and thus unenforceable. They also claim NJM failed to provide adequate notice of the A.7 exclusion. We disagree.

Because GEICO obtained a dismissal of plaintiffs' claims in lieu of filing an answer and NJM obtained a summary judgment dismissal of plaintiffs' claims, we cite the different standards of review for the various orders on appeal.

We review de novo a trial court's determination on a motion to dismiss under Rule 4:6-2(e) for failure to state a claim upon which relief can be granted. See Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 108 (2019). In considering a Rule 4:6-2(e) motion, the court "examine[s] the legal sufficiency of the facts alleged on the face of the complaint," Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989), limiting its review to "the pleadings themselves," Roa v. Roa, 200 N.J. 555, 562 (2010). "If the court considers evidence beyond the pleadings in a Rule 4:6-2(e) motion, that motion becomes a motion for summary judgment, and the court applies the standard of Rule 4:46." Dimitrakopoulos, 237 N.J. at 107.

We review the trial court's grant or denial of a motion for summary judgment de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and

14

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The inquiry focuses on whether the evidence presented, when viewed in the light most favorable to the non-moving party, is "sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also Rozenblit v. Lyles, 245 N.J. 105, 121 (2021).

We begin with plaintiffs' argument the motion judge erred in dismissing the claims against GEICO. Lovering contends Exclusion 5 is unlawful and ambiguous because it conflicts with N.J.S.A. 17:28-1.1 by "excluding UM coverage in the same provision in which it excludes UIM coverage." He further argues Exclusion 5 conflicts with the insured's "reasonable expectation" to receive UM/UIM coverage because the exclusion is not identified on the policy's declaration page and UIM coverage "is linked to the injured person, not to the covered vehicle." We are unpersuaded by Lovering's arguments.

Lovering's arguments were addressed and rejected in Katchen. His counsel recognized our decision in Katchen was binding on the trial court because he requested a without prejudice dismissal of the claims against GEICO

A-0842-20

pending the New Jersey Supreme Court's review of a petition for certification filed in Katchen. Because the outcome in Katchen did not support his arguments, Lovering relies on dicta in the dissenting opinion rather than the majority's holding in that case.[3]

Lovering is correct N.J.S.A. 17:28-1.1 requires UM coverage for New Jersey drivers. However, Lovering's case involves a UIM claim. As we concluded in Katchen, "[w]hether the clause is ambiguous as to the UM benefits has no bearing on whether the clause is ambiguous in regard to UIM benefits." Katchen, 457 N.J. Super. at 606.

In Katchen, we held the exact same language of Exclusion 5 clearly and unambiguously "exclude[d] UIM coverage when an insured suffers injuries in a 'motor vehicle' owned by the insured but not covered by the policy." Id. at 606. We explained, "[a]ny ordinary reasonable person understands a motorcycle is a type of motor vehicle." Ibid. N.J.S.A. 39:1-1 defines a motor vehicle to include "all vehicles propelled otherwise than by muscular power, excepting such vehicles as run only upon rails or tracks and motorized bicycles." Under the

---

[3] Dissenting opinions are not binding authority. See In re Civil Commitment of W.X.C., 204 N.J. 179, 194-95 (2010).

A-0842-20

ordinary meaning as well as the statutory definition, a motorcycle is a motor vehicle.

Exclusionary clauses are presumptively valid if they are "specific, plain, clear, prominent and not contrary to public policy." Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997) (quoting Doto v. Russo, 140 N.J. 544, 559 (1995)). Courts "should not engage in a strained construction to support the imposition of liability." Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537 (1990).

Here, Exclusion 5 limiting UIM coverage is plain, clear, and unambiguous. There is no UIM coverage available to Lovering under GEICO's policy because Lovering's motorcycle was not listed on the declaration page. The only vehicle listed on the declaration page in the GEICO policy was Lovering's personal automobile. Thus, damages suffered in Lovering's motorcycle accident are excluded from coverage under GEICO's policy.

Because the language Exclusion 5 is clear and unambiguous, we need not reach Lovering's argument that the exclusion violated his reasonable expectation of coverage. See Katchen, 457 N.J. Super. at 607 (holding "an insured's

17

reasonable expectations only matter when the court finds the relevant language ambiguous").[4]

We next consider plaintiffs' contention the judge erred in granting summary judgment to NJM because the UIM exclusion was unlawful and ambiguous and NJM failed to provide adequate notice of the UIM exclusion. We disagree.

When determining whether an insurance provision is ambiguous, we start with the plain meaning of the contractual language. Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196, 207 (2017). If the language is clear, "that is the end of the inquiry." Ibid. (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). In such a case, a court should not "engage in a strained construction to support the imposition of liability." Longobardi, 121 N.J. at 537. Absent an ambiguity, courts must interpret insurance policies pursuant to the "plain, ordinary meaning" of the words used. Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001). Where the terms of an insurance policy "are clear, courts should interpret the policy as written and avoid writing a better insurance policy than the one purchased."

---

[4]   We address Lovering's lack of adequate notice of the exclusion in our discussion, supra, regarding the lack of adequate notice claims asserted by Brown and Rolick.

Villa v. Short, 195 N.J. 15, 23 (2008) (quoting President v. Jenkins, 180 N.J. 550, 562 (2004)).

The mere fact that litigants offer two conflicting interpretations of policy language does not make policy language ambiguous. Fed. Ins. Co. v. Campbell Soup Co., 381 N.J. Super. 190, 195 (App. Div. 2005). "A genuine ambiguity arises only when 'the phrasing of the policy is so confusing that the average policy holder cannot make out the boundaries of coverage.'" Ibid. (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979)).

Plaintiffs assert NJM's A.7 exclusion is ambiguous. Specifically, plaintiffs argue the exclusion "utilizes confusing language and fails to advise the policyholder to what limits the coverage steps-down." Plaintiffs contend the exclusion is "insufficient to inform the insured as to the actual numerical amount of the diminished UM/UIM coverage" and is beyond "the grasp" of the average policyholder. According to plaintiffs, NJM could, and should, have employed simpler language by including the dollar amounts in the A.7 exclusion as it did in 2017.

Plaintiffs and NJM cite unpublished opinions in their merits briefs. As a general proposition, we do not rely on unpublished Appellate Division decisions because they are not binding and lack legal precedent. See R. 1:36-3. Moreover,

we need not rely on the unpublished opinions cited by the parties because there are published decisions supporting affirmance of the challenged orders.

We disagree with plaintiffs' assertion that the A.7 exclusion is ambiguous because it cites N.J.S.A. 39:6A-3 rather than specific dollar amounts. Courts will go beyond the "literal text" and interpret a policy according to the insured's understanding where the text "appears overly technical or contains hidden pitfalls," "cannot be understood without employing subtle or legalistic distinctions," "is obscured by fine print," or "requires strenuous study to comprehend." Zacarias, 168 N.J. at 601.

Here, an NJM policyholder should understand the boundaries of coverage based on the clear and unambiguous language in the policy and the Summary. The fact the policy references a statute does not render the policy overly technical. N.J.S.A. 39:6A-3 provides the minimum coverage amounts required under New Jersey law and should be understood by a policyholder. The A.7 exclusion is listed under a heading denoting a "limit of liability" such that an average policyholder would have understood the exclusion if he or she read the provision.

Moreover, NJM's A.7 exclusion contains no fine print and is clearly labeled as an exclusion to UM/UIM coverage. The A.7 exclusion expressly

20

provides there is no UM or UIM coverage for an insured who is injured while occupying a vehicle insured under another insurance policy in which NJM's named insured, the spouse of the named insured, or a family member is a named insured. Nothing in A.7 exclusion requires strenuous study by the policyholder to understand the meaning of the provision. Because nothing in the A.7 exclusion requires a policyholder to employ subtle or legalistic determinations, plaintiffs should have understood the plain meaning of the policy and the limitations on liability for UM/UIM claims.

We also disagree with plaintiffs' contention the term "minimum limits" in the A.7 exclusion is ambiguous. Inclusion of the phrase "minimum limits" has not been deemed ambiguous simply because the dollar amounts are not included. See Morrison v. American Intern. Ins. Co. of Am., 381 N.J. Super. 532, 538 (App. Div. 2005). In Morrison, we stated the policy was not ambiguous because the challenged provision "refers to a statute rather than to a specific monetary amount" defining the minimum limits of coverage. Ibid. We held the policy language did not create an ambiguity because "it simply and clearly states that the insurer's liability as to any insured who is not a named insured or resident family member is the minimum amount contained in the specifically identified statute." Id. at 541. Prior to our decision in Morrison, our Supreme Court found

a clause limiting coverage to the "amount by which the compulsory or financial responsibility law limits exceed the limit of [the customer's liability] insurance" to be valid. Aubrey v. Harleysville Ins. Cos., 140 N.J. 397, 401 (1995),

As did the motion judge, we disagree NJM's 2017 change to the language in the A.7 exclusion supports a conclusion the exclusion's prior language was ambiguous. NJM merely took language from the statute and printed the minimum dollar amounts from the statute in its policy. The additional language to the A.7 exclusion in 2017 did not alter NJM's coverage limitation.

We also reject plaintiffs' claim the absence of the A.7 exclusion in NJM's declaration page rendered NJM's policy unenforceable. In Zacarias, the Court acknowledged the declaration page is the one section of an insurance policy an insured is most likely to read. 168 N.J. at 603-04. While the Court encouraged insurers to find a way to "incorporate as much information as may be reasonably included in the declarations sheet," it did not create a per se rule that exclusions must be reflected on the declaration page. Ibid. The Court recognized such "[a] rule of construction forcing insurers to avoid all cross-referencing in policies would require them to reprint the entire definition section on each page of the policy." Id. at 603. The Court concluded adopting such a construction would not result in insurance contracts that are easier to read and digest but would

achieve the opposite result, rendering insurance contracts lengthier, and generating policies that are more technical, cumbersome, and difficult to understand. Ibid.

If NJM included every exclusion in its declaration page, NJM would be required to reprint dozens of pages of policy language on the declaration page. Reprinting all exclusions on the declaration page would be untenable and counterproductive to providing insureds with a policy that is understandable, clear, and unambiguous.

We next consider plaintiffs' argument that NJM failed to provide adequate notice of the A.7 exclusion. Brown and Rolick claim NJM "failed to provide adequate notice which fairly conveyed the initial addition of Exclusion A.7 with the minimum limits language." Rolick also argues NJM failed to provide any notice of its 2017 change to the A.7 exclusion by including the specific dollar limits of the coverage. We disagree.

In Skeete v. Dorvius, 184 N.J. 5, 9 (2005), our Supreme Court reviewed notice of a step-down provision similar to the A.7 exclusion in NJM's policy.[5]

---

[5] A "step-down" provision is a clause in an insurance policy that "provides different levels of coverage to different insureds based on their status or the existence of other insurance." Seabridge v. Disc. Auto, Inc., 393 N.J. Super. 327, 330 (App. Div. 2007). The A.7 exclusion is a step-down provision.

A-0842-20

There, the Court declined to hold every change to an insurance policy must be included on the declaration page. Ibid. Under the circumstances in Skeete, the Court found the notice regarding the added step-down "insufficient because of its presentation as part of an essentially undifferentiated passel of two hundred documents." Ibid. The Court provided examples of notice to an insured that would be acceptable, stating "had the insurer sent the cover letter with [a] three page notice outlining the changes separately, thus giving the insured a chance to digest the changes before drowning her in a sea of paper, the outcome might well have been different." Ibid.

Here, NJM provided Brown and Rolick with adequate notice of the change to their automobile policies. NJM sent Brown and Rolick a cover letter, informing them, in bold letters, that one of the enclosed documents, entitled "a Summary of Important Changes, . . . outlines new or revised policy provisions introduced with this renewal." NJM further advised Brown and Rolick to contact the company with "any questions or concerns about [their] coverage . . . . " The Summary consisted of two pages and clearly and unambiguously alerted plaintiffs to important changes to their insurance policy. It was incumbent upon plaintiffs to read the policy upon receipt of the Summary identifying important policy changes. We are satisfied NJM did exactly as the

24

Skeete Court suggested to ensure policyholders received adequate notice of important policy changes.

Brown and Rolick also claim they lacked adequate notice because the word "minimum" does not appear in N.J.S.A. 39:6A-3. In addition, they argue the statute does not include the terms "UM" or "UIM," and thus failed to provide notice of NJM's changes in UM/UIM coverage. N.J.S.A. 39:6A-3 provides every owner of an automobile registered or principally garaged in New Jersey shall maintain insurance coverage

> at least in: a. an amount or limit of $15,000.00, exclusive of interest and costs, on account of injury to, or death of, one person, in any one accident; and b. an amount or limit, subject to such limit for any one person so injured or killed, of $30,000.00, exclusive of interest and costs, on account of injury to or death of, more than one person, in any one accident; and c. an amount or limit of $5,000.00, exclusive of interest and costs, for damage to property in any one accident.
>
> [N.J.S.A. 39:6A-3.]

We are satisfied the statute specifies the minimum, or "limit," of coverage for automobile liability insurance for New Jersey drivers by using the term "at least." No technical knowledge or legal research was required for an NJM policyholder to identify the words "at least" meant the minimum insurance coverage required under New Jersey law.

A-0842-20

Additionally, the Summary uses the same heading, "Part B – Uninsured Motorists Coverage" as delineated in NJM's policy regarding the UM/UIM exclusion. We discern no reason for the statute, N.J.S.A. 39:6A-3, to use the terms UM/UIM because NJM defined those terms in its policy and clearly limited a policyholder's UM/UIM recovery.

We also reject Rolick's separate claim NJM failed to provide adequate notice of its 2017 amendment to the A.7 exclusion. Insurance companies are required to provide notice of changes when offering renewal policies where "there have been changes in the restrictions, conditions or limitations of the policy." Bauman v. Royal Indem. Co., 36 N.J. 12, 25 (1961). In such cases, the insurance company must "fairly call[] the insured's attention to a reduction in the policy coverage." Id. at 23; see also Skeete, 184 N.J. at 9.

Here, Rolick's 2017 NJM policy renewal did not change the restrictions, conditions, or limits of coverage. Rather, NJM merely reworded the A.7 exclusion to add the specific dollar amounts consistent with N.J.S.A. 39:6A-3. NJM need not notify Rolick of any changes in 2017 because there was no change in the coverage afforded.

After reviewing the record and governing case law, we are satisfied the judge correctly concluded the exclusions in plaintiffs' insurance policies were

clear and unambiguous and plaintiffs had adequate notice of the changes to their insurance policies related to UM/UIM coverage.

To the extent we have not addressed plaintiffs' remaining arguments, we find the arguments without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION